1  Brian A. Kelly (SBN 124738)
   Andrew Thomas Lloyd (SBN 199367)
2  DUANE MORRIS LLP
   One Market Street, Spear Tower, Suite 2000
3  San Francisco, CA 94105
   Telephone: (415) 957-3000
4  Facsimile: (415) 957-3001

5  Attorneys for Plaintiff,
   Walnut Creek Manor LLC

6

7

8              UNITED STATES DISTRICT COURT

9            DISTRICT OF NORTHERN CALIFORNIA

10

11  WALNUT CREEK MANOR, LLC              NO. _____

12                    Plaintiff,         COMPLAINT FOR:
13       v.                              1.   RCRA – EQUITABLE RELIEF
                                         2.   RCRA – DECLARATORY RELIEF
14  MAYHEW CENTER, LLC, a California limited   3.   CERCLA COST RECOVERY
    liability company; Dean Dunivan, an individual;   4.   CERCLA CONTRIBUTION
15  Etch-Tek, Inc., a former California corporation,   5.   PRIVATE NUISANCE
    Etch-Tek Electronics Corporation, a suspended   6.   PUBLIC NUISANCE
16  California corporation; and DOES 1-50, inclusive.   7.   TRESPASS
                                         8.   NEGLIGENCE
17                                       9.   NEGLIGENCE PER SE
                                         10.  STRICT LIABILITY
18                                       11.  EQUITABLE INDEMNITY
                                         12.  DECLARATORY RELIEF
19

20                                       DEMAND FOR JURY TRIAL

21

22

23                         **PARTIES**

24       1.      The Plaintiff, Walnut Creek Manor LLC ("WCM" or "Plaintiff") is a Delaware

25  limited liability company that operates a senior citizen retirement community at 81 Mayhew Way,

26  Walnut Creek, California, in an unincorporated portion of the County of Contra Costa, California.

27  The property and related buildings are owned by WCM and referred to as the "Walnut Creek Manor

28  property."

2.      On information and belief, Defendant Mayhew Center LLC ("MC") is a California limited liability company which owns and/or operates three light industrial and commercial buildings with addresses of 3301, 3313, and 3333 Vincent Road, Pleasant Hill, California. The property and related buildings, both before and after its purchase by MC, are referred to as the "Mayhew Center property."

3.      On information and belief, Defendant Dean Dunivan ("Dunivan"), an individual, is the owner and principal manager of MC and the Mayhew Center property.

4.      On information and belief, Etch-Tek, Inc. ("Etch-Tek"), a former California corporation, was a tenant and/or owner and operator of the building at 3313 Vincent Road, which is part of the Mayhew Center property.

5.      On information and belief, Etch-Tek Electronics Corporation ("ETEC"), a California corporation, is a successor-in-interest to certain assets and liabilities of Etch-Tek.

6.      True names and capacities, whether individual, corporate, association, or otherwise, of Defendants named in this action as Does 1-50, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that Does 1-50 are responsible for the acts alleged herein and are responsible for the damages to Plaintiff caused thereby.

## JURISDICTION AND VENUE

7.      This case involves a suit by WCM, the owner and operator of a seniors-only apartment complex in Walnut Creek, California against MC, owners and operators of three buildings, which are on the eastern boundary of the Walnut Creek Manor property, Dunivan, Etch-Tek, ETEC and Does 1-50, inclusive.

8.      This action arises under the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, et seq., for contribution and cost recovery pursuant to §9613, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901, et seq., pursuant to the citizen suit provision of RCRA, 42 U.S.C. §6972(a)(1)(B). This court has jurisdiction pursuant to §§9607(a), 9613, and 9613(b) of CERCLA, §6972 of RCRA,

2

1  and pursuant to federal question jurisdiction, 28 U.S.C. § 1331. Plaintiff also maintains claims under

2  various California statutes and common law, which arise out of a common nucleus of operative

3  facts. Accordingly, this court has supplemental jurisdiction over these claims pursuant to 28 U.S.C.

4  §1367.

5       9.     Venue is proper in the Northern District of California under 28 U.S.C. §1391(b), 42

6  U.S.C. § 9613(b), and 42 U.S.C. §6972(c) as this is the District where the release of Hazardous

7  Substances occurred and the claims asserted arose.

## BACKGROUND FACTS AND ALLEGATIONS COMMON
## TO ALL CLAIMS FOR RELIEF

10      10.     This action is brought by WCM. WCM has been the sole owner of the retirement

11  community apartment complex and has continuously operated it since 1964. At no time during the

12  history of WCM's operations has the property been used for any other purpose. Prior to the

13  construction of the retirement community apartment complex, the land had an agricultural use as a

14  walnut orchard.

15      11.     WCM has learned that the soil beneath the retirement community in close proximity

16  to its eastern boundary with the Mayhew Center property is contaminated with tetrachoroethene

17  (also known as perchloroethylene or tetrachloroethylene) ("PCE"). PCE is one of the chemical

18  substances regulated by the federal Environmental Protection Agency. It is listed as a hazardous

19  waste by federal regulation under 40 C.F.R. §261.31 and deemed to be a hazardous material under

20  the California Hazardous Waste Control Act, California Health & Safety Code §25100, et seq.

21      12.     The retirement community WCM operates is located adjacent to property known as

22  the Mayhew Center, at which various commercial and industrial activities have taken place,

23  including but not limited to an electronics manufacturing operation. On information and belief, as a

24  result of operations conducted at the Mayhew Center property, PCE and/or other hazardous

25  substances have been discharged into the soil and/or groundwater at and in the vicinity of the

26  Mayhew Center property. Neither WCM, nor anyone under WCM's control, ever used or

27  discharged PCE.

28

13.    Due to discharges of PCE and/or other hazardous substances as a result of operations conducted at the Mayhew Center property, PCE and/or other hazardous substances have collected in the soil and/or groundwater beneath the Mayhew Center property (the "PCE Plume").  As a result of the detection of PCE and/or other hazardous substances downgradient from the Walnut Creek Manor property, WCM has been forced to expend considerable sums in response.  On information and belief, as a result of various industrial, manufacturing and other activities taking place at the Mayhew Center property, PCE and/or other hazardous substances originating from the Mayhew Center property has leached into and been detected in shallow soil samples at the Walnut Creek Manor property in an area immediately adjacent to its eastern boundary with the Mayhew Center property.  WCM is not responsible for the PCE and/or other hazardous substances detected in shallow samples collected from its property.  Notwithstanding its lack of involvement in the contamination of the soil and/or groundwater with PCE and/or other hazardous substances, WCM has been forced to expend substantial sums of money to investigate soil and groundwater conditions beneath its property.  This investigation activity, which included soil and groundwater samples taken directly from the Mayhew Center property, has demonstrated that the soil and groundwater at the Mayhew Center property is heavily contaminated with PCE and/or other hazardous substances and such contamination has leached into the shallow soil at the Walnut Creek Manor property in an area immediately adjacent to its eastern boundary with the Mayhew Center property.  This contamination and the continued threatened contamination has decreased the value of the Walnut Creek Manor property and adversely affects WCM's ability to sell or otherwise transfer the property.  Furthermore, this contamination has caused WCM to expend substantial sums of money to investigate and analyze the environmental conditions at its property and further investigation and/or remediation activity may be required by the California Regional Water Quality Control Board – San Francisco Bay Region ("Regional Board") and/or other responsible agencies.  As WCM is not responsible for the presence of PCE and/or other hazardous substances, either at the Walnut Creek Manor property or at the Mayhew Center property, WCM should not have to bear these expenses and, therefore, seeks recovery from, and a declaration as to, the responsible Defendants.

14.    At no time did Plaintiff consent to the presence of PCE or any other hazardous substance at the Walnut Creek Manor property nor has the release of PCE or any other hazardous substance at the Mayhew Center property or by any Defendant been exempted pursuant to 40 C.F.R. §§260.20 and 260.22.

15.    The Walnut Creek Manor property has been in use as a residential seniors-only apartment complex since 1964. In that time, it has never been used for any purpose other than as a seniors-only residence.

16.    Plaintiff is informed and believes and thereon alleges that while Etch-Tek was a tenant at and/or owner of the building at 3313 Vincent Road (a building which included Etch-Tek's 3317 Vincent Road address and is now owned by MC) from 1975 to 1982, it was engaged in the electronics manufacturing business, including the manufacturing of electronic circuit boards, a process known to use chemical solvents, including PCE.

17.    Plaintiff is informed and believes and thereon alleges that while Etch-Tek was a tenant and/or owner of the building at 3313 Vincent Road, it used chlorinated solvents, including PCE, as part of its manufacturing process.

18.    Plaintiff is informed and believes and thereon alleges that Etch-Tek erected a storage or disposal tank in the parking lot of the building at or near 3313 Vincent Road. This tank was present during the Etch-Tek electronic manufacturing operations and was removed at or near the time Etch-Tek vacated the Mayhew Center property.

19.    Plaintiff is informed and believes and thereon alleges that after Etch-Tek moved its operations to a new facility at 2245 Bates Drive, Concord, California, it continued its operations in the electronic manufacturing business, and relocated the storage or disposal tank from its previous Mayhew Center location to its new Concord facility.

20.    Plaintiff is informed and believed and thereon alleges that the soil and groundwater at the Etch-Tek Concord facility has also been contaminated with PCE in areas proximate to the location of the relocated tank.

21.    Plaintiff is informed and believes and thereon alleges that, since 1982, the assets and/or ownership interest of Etch-Tek, have been variously held by MicroTel Corporation (later known as Emrise Corporation), ETEC and potentially by other corporate entities and/or individuals.

22.    Plaintiff is informed and believes and thereon alleges that PCE leaked into the soil and groundwater below the building at 3313 Vincent Road as well as below the storage or disposal tank that was located in the parking lot and next to its exposed soil planter bed that runs adjacent to and along its property boundary with the Walnut Creek Manor property.

23.    Plaintiff is informed and believes and thereon alleges that, based on a number of samples taken and analyzed by licensed environmental professionals retained by WCM in compliance with a California Water Code Section 13267(b) site investigation demand made by the Regional Board, the PCE contamination has spread from a PCE hotspot known to exist at or near the previous location of the storage or disposal tank at the Mayhew Center property.

24.    Plaintiff is informed and believes and thereon alleges that the PCE contamination has, over time, spread both vertically down from the surface under the Mayhew Center property and laterally primarily along the groundwater gradient (generally to the northeast) but has also spread radially through the soil from the Mayhew Center source of PCE contamination, such that certain PCE contamination originating from the Mayhew Center property now is present in shallow soil at the Walnut Creek Manor property.

25.    Plaintiff is informed and believes and thereon alleges that the PCE contamination from the Mayhew Center property has migrated onto the Walnut Creek Manor property.

### FIRST CLAIM FOR RELIEF  (EQUITABLE RELIEF UNDER RCRA)

26.    Plaintiff realleges and incorporates paragraphs 1 through 25, inclusive, by reference as though set forth in full herein.

27.    Plaintiff is informed and believes that conditions at the Mayhew Center property may present an imminent and substantial endangerment to health or the environment, including the current threat of harm to and contamination of groundwater at and beneath the site and surface waters near and adjacent to the site, as well as the current threat of harm to persons who may be

1  exposed to toxic levels of solid or hazardous wastes in uncovered or unprotected soils at the Mayhew

2  Center property and/or the Walnut Creek Manor property.

3      28.    Such endangerment stems from the handling, storage, treatment, transportation, or

4  disposal of solid and hazardous wastes as defined by RCRA, 42 U.S.C. §6972, 6903(5), 6903(27),

5  including but not limited to chlorinated solvents such as PCE.  This disposal of hazardous waste,

6  including PCE, is prohibited by 42 U.S.C. sec. 6924(d)(2)(E), other prohibitions in Subchapter III of

7  RCRA, and the regulations promulgated under Subchapter III which prohibit disposal of certain

8  hazardous wastes, including PCE, as set forth in 40 C.F.R. sections 261.33, 261.33(f) and elsewhere.

9      29.    Defendants caused or have contributed to the handling, storage, treatment,

10  transportation, or disposal of such hazardous wastes.

11      30.    Prior to the filing of this complaint, Plaintiff served notices of endangerment pursuant

12  to 42 U.S.C. §6972(b)(2)(A) by mailing, via registered mail, return receipt requested, written notices

13  to Defendants, the Administrator of the United States Environmental Protection Agency, the Region

14  IX Regional Administrator of the United States Environmental Protection Agency, the Secretary of

15  the California Environmental Protection Agency, the Executive Director of the California State

16  Water Resources Control Board, and the Contra Costa County Department of Health Services.

17      31.    Plaintiff is informed and believes and thereon alleges that Defendants are in violation

18  of Subchapter III of RCRA and has filed this complaint following the service of the relevant notices

19  of endangerment, as set forth in the preceding paragraph.

20      32.    Plaintiff is aware of an ongoing investigation by Regional Board, a division of the

21  California State Water Resources Control Board, but to date these investigations have led to no

22  orders to restrain or abate the acts or conditions which may have contributed to, or are contributing

23  to, the endangerment.

24      33.    Plaintiff is not aware of any action taken by or on behalf of the United States, the

25  Environmental Protection Agency, the State of California, or any state agency to restrain or abate

26  acts or conditions which may have contributed to, or are contributing to, the activities which

27  constitute the alleged endangerment, as set forth in 42 U.S.C. §6972(b)(2)(B).

28

**SECOND CLAIM FOR RELIEF  (DECLARATORY RELIEF UNDER RCRA)**

34.    Plaintiff realleges and incorporates paragraphs 1 through 33, inclusive, by reference as though set forth in full herein.

35.    An actual controversy exists between Plaintiff and Defendants in that Plaintiff contends, and Defendants deny, that Defendants have obligations and potential legal liabilities under RCRA to undertake and perform all actions and activities necessary to abate and remedy the conditions at the Mayhew Center property and the Walnut Creek Manor property that may present an imminent and substantial endangerment to health or the environment, and to eliminate any risks to health or the environment posed by solid or hazardous wastes at the site, and for costs of litigation (including reasonable attorneys' fees and expert witness fees).

36.    Absent a judicial declaration setting forth the parties' rights and obligations with respect to these actions and costs, duplicate and multiple actions may result.  Government agencies have the right to bring suit in order to ensure adequate remediation of the solid or hazardous waste contamination presently existing on the site.  Plaintiff therefore requests a judicial determination of the rights and obligations of the parties with regard to the presence of solid or hazardous wastes at the Mayhew Center property and the Walnut Creek Manor property.

37.    Plaintiff requests a judicial declaration setting forth Defendants' liabilities to Plaintiff with regard to the action and activities necessary to abate and remedy the conditions at the site that may present an imminent and substantial endangerment to health or the environment, and to eliminate any risks to health or the environment posed by solid or hazardous wastes at the site, and for costs of litigation (including reasonable attorneys' fees and expert witness fees).

**THIRD CLAIM FOR RELIEF (CERCLA COST RECOVERY)**

38.    Plaintiff realleges and incorporates paragraphs 1 through 37 inclusive, by reference as though set forth in full herein.

39.    The Walnut Creek Manor property and the Mayhew Center property, at all times relevant herein, are each a "Facility" as defined under Section 101(9) of CERCLA, 42 U.S.C. §9601(9).

40. Plaintiff is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. §9601(21) that has incurred costs under Section 107(a) of CERCLA, 42 U.S.C. §9607(a).

41. MC is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a "Liable Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

42. Dean Dunivan is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which he was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a "Liable Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

43. Etch-Tek, is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a "Liable Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

44. ETEC, is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and by merger and/or acquisition is responsible during the period in which it was in possession and use of the Mayhew Center property, as an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a "Liable Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

45. Does 1-50 are each a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and were, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a "Liable Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

46.     Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, operated and/or owned the Mayhew Center property where Hazardous Substances, including PCE, have been discharged and/or released and/or have continued to migrate into the environment on and under the Mayhew Center property.

47.     Plaintiff, a passive non-negligent record title owner of the Walnut Creek Manor property, has been required to incur, and may continue to be required to incur costs of response to investigate and remediate Hazardous Substances on, at, or under the Walnut Creek Manor property and/or the Mayhew Center property despite the fact that Plaintiff did not cause or contribute to the release of the Hazardous Substances. Defendants, and each of them, due to their acts of negligence and/or willful misconduct in the release, discharge and disposal of Hazardous Materials, are absolutely and strictly liable, on a joint and several basis, for all necessary costs of response to investigate and remediate the release of, or threat of release of, Hazardous Substances at the Mayhew Center property and/or the Walnut Creek Manor property and to hold Plaintiff harmless for all such costs.

48.     As a direct and proximate result of the wrongful release, discharge, dispersal and disposal of Hazardous Substances by Defendants at the Mayhew Center property, which have migrated to the Walnut Creek Manor property, Plaintiff has incurred and may continue to incur, costs of testing, investigation, and remediation of the releases, and threatened releases of Hazardous Substances into the soil, subsoil, and groundwater at, under, and emanating from Mayhew Center property.

49.     Any costs Plaintiff has incurred, or will incur, including attorneys' fees expended in this action are, and will be, necessary costs of response consistent with the National Contingency Plan ("NCP") within the meaning of Section 107(a) of CERCLA, 42 U.S.C. §9607(a). Accordingly, Plaintiff is entitled to reimbursement for all such past, present and future costs, together with interest, from the Defendants, jointly and severally, pursuant to Section 9607(a).

## FOURTH CLAIM FOR RELIEF (CERCLA CONTRIBUTION)

50.     Plaintiff realleges and incorporates paragraphs 1 through 49, inclusive, by reference as though set forth in full herein.

10

51.     Plaintiff, a passive non-negligent record title owner of the Walnut Creek Manor property, has been required to incur, and may continue to be required to incur costs of response to investigate and remediate Hazardous Substances on, at, or under the Walnut Creek Manor property and/or the Mayhew Center property despite the fact that Plaintiff did not cause or contribute to the release or presence of the Hazardous Substances.  Defendants, and each of them, due to their acts of negligence and/or willful misconduct in the release, discharge, dispersal and disposal of Hazardous Materials, are absolutely and strictly liable, on a joint and several basis, for all necessary costs of response to investigate and remediate the release of, or threat of release of, Hazardous Substances at the Mayhew Center property and/or the Walnut Creek Manor property and to hold Plaintiff harmless for all such costs.

52.     As a direct and proximate result of the disposal of such Hazardous Substances by Defendants at the Mayhew Center property and the Walnut Creek Manor property, Plaintiff has incurred and may continue to incur, costs for testing, investigation and remediation of the releases, and threatened releases of Hazardous Substances into the soil, subsoil, and groundwater at, under and emanating from the Mayhew Center property.

53.     Any costs Plaintiff has incurred, or will incur, including attorneys' fees expended in this action are, and will be, necessary costs of response consistent with the National Contingency Plan ("NCP") within the meaning of Section 107(a) of CERCLA, 42 U.S.C. §9607(a).  Accordingly, Plaintiff is entitled to reimbursement for all such past, present and future costs, together with interest, from the Defendants, jointly and severally, pursuant to Section 9607(a)

54.     Plaintiff is afforded the right under Section 113(f) of CERCLA, 42 U.S.C. §9613(f) to seek contribution from any other party who is liable or potentially liable under Section 107(a) for necessary costs of response incurred by Plaintiff for the investigation and remediation of the release of chemical contamination.  Plaintiff is entitled to contribution from Defendants pursuant to Section 113(f), for all necessary costs of response, together with interest or court costs.

55.     In the alternative, if Plaintiff is determined to be a "Potentially Liable Party" within the meaning of Section 107(a) of CERCLA, 42 U.S.C. §9607(a), it may seek recovery under Section 107(a).  *United States v. Atlantic Research Corporation*, 551 U.S. ___ (Slip Opinion, June 11, 2007).

## FIFTH CLAIM FOR RELIEF (PRIVATE NUISANCE)

56.     Plaintiff realleges and incorporates paragraphs 1 through 55, inclusive, by reference as though set forth in full herein.

57.     WCM is informed and believes, and on that basis alleges, that as a direct and proximate result of Defendants' actions, including but not limited to the disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action, including but not limited to their failure to investigate and remediate soil and/or groundwater and to abate the presence of such hazardous substances, including PCE, Plaintiff has been harmed by, including but not limited to, contaminated soil and/or groundwater at or near the Walnut Creek Manor property. Thus, Defendants are interfering with and precluding WCM's free use and enjoyment of its property, and are threatening to impair and injure the health of WCM and other individuals who would live at, visit, conduct business or otherwise utilize the property.

58.     Defendants' actions and inactions, as alleged, have caused and are causing injury to the property and to WCM. WCM did not authorize, sanction or agree to Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE.

59.     The contamination in the soil at and around the Walnut Creek Manor property is migrating and will continue to migrate. As the contaminants migrate, the damage to the property worsens and will continue to worsen into the future. Each day that hazardous substances released by Defendants remain at and migrate onto the Walnut Creek Manor property, or remain at and migrate from the Mayhew Center property, the nuisance continues. Accordingly, as a result of Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action, including but not limited to their failure to investigate and to remediate soil and/or groundwater and to abate the presence of such hazardous substances, including PCE, the contamination currently existing in the soil under the Walnut Creek Manor property which can be reasonably abated, remediated or cleaned up by Defendants or other entities, constitutes a continuing private nuisance.

60.    Defendants' actions and/or inactions, as alleged, and the resultant permanent nuisance, has directly and proximately caused damages to WCM, including, but not limited to, a decrease and diminution in the value of the Walnut Creek Manor property, and undetermined damages due to the stigma caused by the contamination of the surface and subsurface soil, the environment on and around the Walnut Creek Manor property, which impairs WCM's ability to either sell or secure a loan against its property, and the uncertainty regarding future contamination and damages, as well as other damages set forth above, including other consequential, incidental and general damages to be proven at trial.

61.    The presence of hazardous substances at the Mayhew Center property, the Walnut Creek Manor property, and any other property so affected by the PCE Plume constitutes a "nuisance" within the meaning of Cal. Civ. Code §3479, in that they are injurious to the health of Plaintiff, and the presence of hazardous substances interferes with Plaintiff's free use and comfortable enjoyment of its property.  The nuisance created by Defendants at the Mayhew Center property affects, at the same time, a considerable number of persons in that the hazardous substances present at the Mayhew Center property and the Walnut Creek Manor property may continue to migrate from and/or impact the surrounding environment by impacting groundwater and thereby prevent public use of such water sources due to the presence of the hazardous substances or any hazardous chemical constituents.  The nuisance causes special injury to Plaintiff in that the use and encumbrance of the Walnut Creek Manor property are being interfered with due to the existence of the contamination and the extensive investigation required to determine the nature and extent of the presence of the hazardous substances, the risk that such hazardous substances present to the senior-citizen residents of the Walnut Creek Manor property, and the remedial action that is or may become necessary to abate the nuisance.

62.    At all material times, Defendants, and each of them, had a duty not to permit or allow the continuance of a nuisance at, under, or emanating from the Mayhew Center site.  Defendants, and each of them, have breached and are breaching that duty by their failure to undertake reasonable investigation and remediation, by allowing hazardous substances to remain at and/or migrate from

13

1  the Mayhew Center property and Walnut Creek Manor property. Defendants, and each of them, will

2  continue to maintain the nuisance unless restrained by this Court.

3      63.    The contamination caused and/or allowed to continue by Defendants on or under the

4  Mayhew Center property, which has migrated to the Walnut Creek Manor property, constitutes a

5  continuing nuisance, which is subject to substantial or complete abatement, utilizing commonly

6  available environmental engineering techniques required by applicable government regulations.

7  Moreover, such abatement can be performed in a reasonable manner within the meaning of *Mangini*

8  *v. Aerojet-General Corporation*, 12 Cal. 4th 1087 (1996).

9      64.    Unless Defendants, and each of them, are required to remove the existing

10 contamination, it will be necessary for Plaintiff to commence many successive actions against

11 Defendants, and each of them, to secure compensation for damages sustained. If Defendants are not

12 required to remove the contamination, Plaintiff will suffer irreparable harm, in that the value and

13 usefulness of the Walnut Creek Manor property will be affected.

14     65.    The Defendants are liable for all consequences and damages and costs of arising from

15 their failure to abate a continuing nuisance, including but not limited to a series of soil and

16 groundwater investigations, additional discharge characterization, cleanup, and appropriate

17 remediation costs necessary and appropriate to restore the Walnut Creek Manor property to its

18 original condition, and otherwise comply with the requirements of applicable governmental entities

19 having jurisdiction, including but not limited to, Contra Costa County, the Regional Board, and the

20 State of California.

21     66.    As a direct and proximate result of the nuisance created and maintained by

22 Defendants, and each of them, the value of the Plaintiff's property has been diminished in an amount

23 to be proven at trial. Unless the nuisance is abated, Plaintiff's property will continue to diminish in

24 value.

25     67.    As a direct and proximate result of the nuisance which resulted from the action and/or

26 inaction by these Defendants while the Mayhew Center property was under their control or occupied

27 by them, these Defendants should be required to remove contamination and compensate Plaintiff for

28 damages to be proven at trial.

68.    Because Plaintiff has no speedy or adequate remedy at law, injunctive relief is expressly authorized under Section 731 of the California Code of Civil Procedure.

**SIXTH CLAIM FOR RELIEF (PUBLIC NUISANCE)**

69.    Plaintiff realleges and incorporates paragraphs 1 through 68, inclusive, by reference as though set forth in full herein.

70.    Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, or Defendants' failure to take action to remediate soil and/or groundwater from the presence of such hazardous substances, including PCE, have allowed such hazardous substances, including PCE, into the surface and subsurface soil and the environment on and around the Walnut Creek Manor property, gives rise to a public nuisance that affects not only the Walnut Creek Manor property but the communities of Walnut Creek, Pleasant Hill and the surrounding area.  Because the chemicals, contaminants and hazardous substances, including PCE, have spread and threaten to continue to spread to adjacent properties, including under public streets and sidewalks, and have polluted the soils and groundwater of the State of California, it is of great public concern.  The chemicals, contaminants and hazardous substances, including PCE in, under and around the Walnut Creek Manor property substantially devalues the property, and have caused WCM monetary damages, and WCM has therefore suffered injuries different in kind from those suffered by the general public.

71.    WCM alleges that as a proximate result of the chemicals, contaminants and hazardous substances, including PCE, having been released and discharged onto its property, the property has been permanently damaged.  Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, into the surface and subsurface soil and the environment on and around the Walnut Creek Manor property or Defendants' failure to take action to remediate soil and/or groundwater from the presence of such hazardous substances, including PCE, and the resultant continuing nuisance, has directly and proximately caused damages to WCM, including, but not limited to, a decrease and diminution in the value of the Walnut Creek Manor property, and undetermined damages due to the stigma caused by the contamination of the surface and subsurface soil, the environment in and around the Mayhew

15

1    Center property, and the Walnut Creek Manor property, which condition has impaired WCM's

2    ability to either sell or secure a loan against its property. At the same time, the releases and

3    discharges of chemicals, contaminants and hazardous substances, including PCE, by Defendants has

4    affected the entire community and the comfort, convenience and health of a considerable number of

5    persons, although the extent of the annoyance, danger, and damage inflicted upon the residents of the

6    surrounding communities may be unequal.

7        72.    The presence of hazardous substances at the Mayhew Center property, the Walnut

8    Creek Manor property, and any other property so affected by the PCE Plume constitutes a

9    "nuisance" within the meaning of Cal. Civ. Code §3479, and a "public nuisance" within the meaning

10   of Cal. Civ. Code §3480.

11       73.    The abatement of the nuisance will result in the enforcement of important rights that

12   affect the public interest, in that a significant benefit will be conferred on the general public,

13   including but not limited to, the hundreds of senior residents of Walnut Creek Manor and others in

14   the vicinity of the Mayhew Center property. This action (a) raises strong issues of public importance

15   and policy which are in need of vindication by legal action; (b) presents the necessity for private

16   enforcement of said issues and rights, the resulting burden of which falls on WCM; and (c) will

17   benefit the health and safety of the community. Accordingly Plaintiff is entitled to an award of

18   attorney's fees pursuant to the provisions of California Code of Civil Procedure §1021.5. Because

19   significant benefits will be conferred on the general public, the necessity and financial burden of

20   private enforcement are such as to make an award appropriate.

21       74.    WCM demands that it recover its reasonable attorneys' fees and costs incurred in

22   prosecuting this action.

23              **SEVENTH CLAIM FOR RELIEF (TRESPASS)**

24       75.    Plaintiff realleges and incorporates paragraphs 1 through 74, inclusive, by reference

25   as though set forth in full herein.

26       76.    Defendants' disposal, discharge, depositing, dumping, abandonment and release of

27   chemicals, contaminants and hazardous substances, including PCE, and/or failure to investigate,

28   remediate and abate such contaminants has intruded upon the Walnut Creek Manor property in such

16

1  a manner as to cause a physical invasion of the Walnut Creek Manor property and to interfere with

2  WCM's possession, use and enjoyment of its property.

3    77.    Plaintiff is informed and believes and thereupon alleges that the Defendants, and each

4  of them, trespassed on the Walnut Creek Manor property, and/or allowed a trespass to be committed

5  on the Walnut Creek Manor property during the time they had, and exercised ownership and/or

6  control over the Mayhew Center property by their actions in disposing of hazardous substances

7  and/or allowing hazardous substances to be disposed of or present on the Mayhew Center property,

8  and/or failing to take action to investigate and remediate soil and/or groundwater and to abate the

9  contamination, and allowing such hazardous substances to migrate onto the Walnut Creek Manor

10  property. Such hazardous substances at the Walnut Creek Manor property continue to affect the soil

11  and/or groundwater and/or continue to encroach upon the Walnut Creek Manor property, thereby

12  constituting a continuing trespass.

13    78.    As a proximate result of this continuing trespass, Plaintiff has been damaged to date

14  in an amount to be proven at trial.

15  **EIGHTH CLAIM FOR RELIEF (NEGLIGENCE)**

16    79.    Plaintiff realleges and incorporates paragraphs 1 through 78, inclusive, by reference

17  as though set forth in full herein.

18    80.    At the time they had and exercised control and/or ownership over the Mayhew Center

19  property, Defendants, and each of them, owed a duty to Plaintiff to exercise ordinary care and skill,

20  so that the hazardous substances would not contaminate the soil and/or the groundwater at or under

21  the Walnut Creek Manor property, as it was reasonably foreseeable that as a result of such lack of

22  care, the owners of Walnut Creek Manor and/or other persons or entities would suffer damages,

23  including those relating to the investigation and clean up of contamination of the soil and/or

24  groundwater.

25    81.    Plaintiff is informed and believes and thereupon alleges that at the time they had and

26  exercised control and/or ownership over the Mayhew Center property, Defendants, and each of

27  them, breached their duty of care and negligently operated their business operations in a manner that

28  resulted in the Hazardous Substance contamination of the soil and groundwater.

82.    Defendants have failed to take any action to properly characterize, investigate, remediate or abate the contamination present at and migrating from the Mayhew Center property, despite numerous demands for such investigation and site characterization work and a Notice of Violation from the Regional Board.

83.    Upon being informed of the presence of PCE and other hazardous substances in soil and groundwater at and beneath the Mayhew Center property, Defendants had a duty to take reasonable steps to investigate, remediate, abate and mitigate such contamination.

84.    As a proximate result of the Defendants' failure to investigate as directed and/or take reasonable mitigation, abatement or remediation efforts, Plaintiff has been damaged in an amount to be proven at trial.

**NINTH CLAIM FOR RELIEF (NEGLIGENCE PER SE)**

85.    Plaintiff realleges and incorporates paragraphs 1 through 84, inclusive, by reference as though set forth in full herein.

86.    Defendants' conduct, including their failure to exercise due care and improperly and negligently collecting, using, storing, disposing of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action to investigate, remediate or abate soil and/or groundwater contamination emanating from Mayhew Center property, violated various state and federal statutes, rules and regulations which set a standard of care and conduct intended to protect WCM, its property and others similarly situated, and the local environment. Additionally, Defendants have repeatedly failed to conduct investigation and other activities, including those directed by the Regional Board and/or other responsible agencies as required pursuant to the California Water Code, other statutes, rules, and regulations.  Therefore such improper activities and violations of law constitute negligence *per se*.

87.    Pursuant to California Water Code §§ 13241, 13260, 13264, 13265, 13267, and 13385, which sections prohibit the discharge of any waste or material that could affect the quality of waters of the state, including groundwater, Defendants, and each of them, owed a duty of care to Plaintiff not to contaminate the soil and groundwater at and below the Walnut Creek Manor property.

88.    As owners, operators, lessors, lessees, and/or managers of the property in the immediate vicinity of the Walnut Creek Manor property, Defendants specifically violated the provisions of California Health & Safety Code §5411, which provides that "no person shall discharge sewage or other waste, or the effluent of treated sewage or other waste, in any manner which will result in contamination, pollution or a nuisance."

89.    The violation of the aforementioned provisions of the California Water Code and Health & Safety Code, and other potentially applicable statutes by Defendants proximately cause trespass and nuisance to the Walnut Creek Manor property, diminution of value to the property, and further consequential, incidental and general damages to WCM.

90.    The violation of the aforementioned provisions of the California Water Code and Health & Safety Code, and other potentially applicable statutes were intended to prevent this type of injury to WCM and its property, and WCM is a member of the class of persons for whose protection these statutes were adopted.

91.    As a proximate result of Defendants' violations of the statute set forth herein, and negligence *per se*, WCM has suffered and will continue to suffer consequential, incidental and general damages, in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF (STRICT LIABILITY)

92.    Plaintiff realleges and incorporates paragraphs 1 through 91, inclusive, by reference as though set forth in full herein.

93.    Defendants knew, or should have known, that their failure to use reasonable care in controlling, monitoring, maintaining and operating their property and in collecting, using, storing, disposing of, and causing to be disposed of chemicals, including PCE and/or other hazardous substances, would create and has created actual harm to WCM and others.  Defendants knew or should have known that there existed, and still exists, a certainty of harm to others, including WCM, that would result from the disposing of, discharging, depositing, releasing, and allowing the release of PCE and/or other hazardous substances into the soil and/or groundwater on and around the Walnut Creek Manor property.

94.     Defendant's handling, use, storage, and/or disposal of hazardous substances, including PCE, on or adjacent to the Mayhew Center property constituted an ultrahazardous activity.

95.     As a proximate result of the acts of these Defendants, and each of them, in the course of their ultrahazardous activity as alleged above, Plaintiff has suffered damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF (EQUITABLE INDEMNITY)

96.     Plaintiff realleges and incorporates paragraphs 1 through 95, inclusive, by reference as though set forth in full herein.

97.     In complying with various site investigation requirements of the Regional Board related to the PCE and/or hazardous substances contamination at the Walnut Creek Manor property and Mayhew Center property, Plaintiff has discharged a duty and continues to discharge a duty which is owed by Plaintiff, but as between Plaintiff and the Defendants, and each of them, should have been discharged by Defendants.  Plaintiff is entitled to indemnity from Defendants, and each of them, for all costs that Plaintiff has incurred to date, and all costs that Plaintiff will incur in the future.

## TWELFTH CLAIM FOR RELIEF (DECLARATORY RELIEF)

98.     Plaintiff realleges and incorporates paragraphs 1 through 97, inclusive, by reference as though set forth in full herein.

99.     An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties.  Plaintiff has sustained, and will sustain in the future, injury and damages as alleged herein for the hazardous substance contamination of the soil and/or groundwater, for which Defendants, and each of them, is liable.  Defendants dispute these contentions and deny that they have any obligation to Plaintiff.  Defendants further assert that Plaintiff is in fact responsible for the contamination.

100.    Accordingly, a judicial declaration is necessary and appropriate at this time to determine the extent of the respective rights, duties, and obligations of the parties, including responsibility for the presence of PCE and/or other hazardous substances and the costs incurred, and

to be incurred, in investigating and responding to the soil and/or groundwater contamination at the Walnut Creek Manor property, the Mayhew Center property, and elsewhere.

## DEMAND FOR JURY TRIAL

101.    WCM hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Walnut Creek Manor, LLC prays for relief as follows:

1.    That the court issue a judgment declaring Defendants, and each of them, liable for the costs of investigating and remedying the release of Hazardous Substances at and in the vicinity of the Walnut Creek Manor property.

2.    That the court issue a judgment declaring that, as to Plaintiff, the release of Hazardous Substances occurred solely due to actions by third parties, and that Plaintiff is not liable for any costs of investigating or remedying the release of Hazardous Substances.

3.    That the court award Plaintiff the costs of investigation, removal and response costs that it has incurred as a result of the release of the Hazardous Substances at the Mayhew Center property and their migration onto the Walnut Creek Manor property.

4.    That the court award Plaintiff the costs of investigation, removal and response costs that it will incur in the future as a result of the release of the Hazardous Substances at the Mayhew Center property and their migration onto the Walnut Creek Manor property, in an amount according to proof.

5.    That the court award to Plaintiff such other damages as may be provided by law or equity in an amount according to proof.

6.    That the court award Plaintiff prejudgment interest on all investigation, removal and response costs incurred, and any other interest according to law.

7.    That the court award Plaintiff its attorneys' fees, per contract or otherwise, costs and disbursements incurred in responding to the release of Hazardous Substances, and in prosecuting this action.

8.    That the court issue a judgment declaring that Defendants are liable for all actions and activities necessary to investigate, abate and remedy the conditions at the Mayhew Center property

1  and Walnut Creek Manor property that may present an imminent and substantial endangerment to

2  health or the environment, and to eliminate any risks to health or the environment posed by solid or

3  hazardous wastes at the Mayhew Center property and Walnut Creek Manor property, and for costs of

4  litigation (including reasonable attorneys' fees and expert witness fees).

5       9.    That the court order Defendants to undertake and perform all actions and activities

6  necessary to investigate, abate and remedy the conditions at the Mayhew Center property and

7  Walnut Creek Manor property that may present an imminent and substantial endangerment to health

8  or the environment, and to eliminate any risks to health or the environment posed by solid or

9  hazardous wastes at the Mayhew Center property and Walnut Creek Manor property, and for costs of

10 litigation (including reasonable attorneys' fees and expert witness fees).

11      10.   That the court order Defendants to remediate the Mayhew Center property and

12 Walnut Creek Manor property as required by law and/or equity.

13      11.   For retention of jurisdiction by the court of this matter until such time as Defendants

14 have implemented and effectuated all appropriate remedial measures to address the release or

15 threatened release of hazardous substances at the Mayhew Center property and their migration to the

16 Walnut Creek Manor property.

17

18

19                                        Respectfully Submitted,

20 DATED: NOVEMBER 7, 2007              DUANE MORRIS LLP

21

22                                        Brian A. Kelly

23                                        Attorneys for Walnut Creek Manor, LLC

24 DM2\1199705.1

25

26

27

28

WALNUT CREEK MANOR LLC's COMPLAINT FOR RCRA EQUITABLE RELIEF, RCRA DECLARATORY RELIEF, CERCLA COST RECOVERY, CERCLA CONTRIBUTION, AND FOR CERTAIN STATE LAW CLAIMS