```
Brian A. Kelly (SBN 124738)
Andrew T. Lloyd (SBN 199367)
DUANE MORRIS LLP
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
Email: bakelly@duanemorris.com
       atlloyd@duanemorris.com

Attorneys for Plaintiff and Cross-Defendant
WALNUT CREEK MANOR LLC


Fred M. Blum (SBN 101586)
Jonathan E. Meislin (SBN 243523)
BASSI, MARTINI, EDLIN & BLUM LLP
351 California Street, Suite 200
San Francisco, CA 94104
Telephone: 415.397.9006
Facsimile: 415.397.1339
Email: fblum@bmeblaw.com
       jmeislin@bmeblaw.com

Attorneys for Defendants and Cross-Claimants
MAYHEW CENTER LLC and DEAN DUNIVAN
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (OAKLAND)

| | |
|---|---|
| WALNUT CREEK MANOR, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>MAYHEW CENTER, LLC, a California limited liability company; Dean Dunivan, an individual; Etch-Tek, Inc., a former California corporation, Etch-Tek Electronics Corporation, a suspended California corporation; and DOES 1-50, inclusive,<br><br>        Defendants | CASE NO. C-07-5664<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: March 4, 2008<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2, Hon. Claudia Wilken<br><br>Complaint Filed: November 7, 2007<br>Trial Date: none set |

MAYHEW CENTER, LLC, a California limited liability company; Dean Dunivan, an individual,

Cross-Claimants,

v.

WALNUT CREEK MANOR, LLC,

Cross-Defendants

Pursuant to the Court's November 7, 2007 Order Setting Initial Case Management Conference and ADR Deadlines and Civil Local Rule 16-9, Plaintiff and Cross-Defendant Walnut Creek Manor ("WCM") and Defendants and Cross-Claimants Mayhew Center, LLC ("MC") and Dean Dunivan ("Dunivan") jointly submit this Case Management Conference Statement.

1. **Jurisdiction and Service**

   a. *Jurisdiction*

   Jurisdiction is proper in this Court, based on the provisions of Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 USC §§9601, et seq., the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901, et seq., and federal question jurisdiction under 28 U.S.C. §1331. In addition, both Plaintiff and Cross-Claimants raise a number of claims under various California statutes and common law, which arise out of a common nucleus of operative facts. Accordingly, this court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. §1367.

   Venue is proper in the Northern District of California under 28 U.S.C. §1391(b), 42 U.S.C. §9613(b), and 42 U.S.C. §6972(c) as this is the District where the alleged releases of the hazardous substances occurred and the claims asserted arose.

   b. *Service*

   MC and Dunivan have been served with and have answered the Complaint. Mr. Kenneth Beard, a former principal of Etch-Tek, Inc. ("Etch-Tek"), was served with the Complaint on

1  January 8, 2008. Although Etch-Tek has not yet answered the Complaint, counsel for Mr. Beard has contacted counsel for WCM to indicate that Etch-Tek is a dissolved California corporation without known insurance assets. Mr. Beard's counsel requested and obtained a two week extension to determine how, if at all, it will respond. Bryan Fuller, a former principal of Etch-Tek Electronics Corporation ("ETEC") and its designated agent for service of process, has moved to rural Ohio and has not yet been successfully served with the Complaint.

WCM has been served with and has answered the Cross-Complaint.

2.  **Factual Background**

This is a environmental case in which both the plaintiff/cross-defendant and defendants/cross-claimants assert mutually exclusive theories for the origin of tetrachloroethene (PCE) and/or other hazardous materials contamination which has been discovered, in varying concentrations, along the border of the parcel owned and operated by Walnut Creek Manor (the "WCM Site") and the parcel owned and operated by MC (the "MC Site"). The WCM Site, located in Walnut Creek, California, has been home to a seniors-only residence apartment complex since it was first opened in 1964. The MC Site, located immediately adjacent and to the east of the WCM Site (and sharing approximately 500 feet of property boundary) is located in Pleasant Hill, California and was first developed in the 1970s. Its facilities have been leased to various commercial and light industrial tenants since then. MC claims that no tenant at its site utilized any of the contaminants at issue. WCM disputes this. Mayhew Center LLC purchased the property in 1993 and has owned and operated the three buildings which make up Mayhew Center since that time. Prior to the construction of Walnut Creek Manor and Mayhew Center, each property had been a walnut orchard.

In October and November of 2001, during an ongoing investigation by the Regional Water Quality Control Board ("Regional Board") into groundwater contamination at the nearby Hookston Station property, passive soil samples indicated the presence of PCE along Vincent Road, immediately to the east of the MC Site. Beginning in May 2003 and as recently as December 2006, the Regional Board issued a series of orders, pursuant to Section 13267 of the California Water

Code, variously directing WCM and MC to undertake a series of investigations regarding the PCE contamination.

In the course of these investigations, specific data was developed which indicated the presence of PCE in the soil and/or groundwater at and under the MC Site and the WCM Site, near the border of these two sites. The dispute between the parties is, in essence, the question of which party is responsible for the PCE contamination and what remedies, if any, are appropriate.

3.  **Legal Issues**

In general, the parties do not dispute the appropriate legal standards for the claims in the Complaint and Cross-Complaint. Rather, the questions to be tried in this court primarily boil down to the origin of the PCE and/or other hazardous materials in the soil and groundwater and whether liability attaches to Mayhew Center, Dean Dunivan, Etch-Tek, and/or ETEC, as maintained by the Plaintiffs, or Walnut Creek Manor, as maintained by the Cross-Claimants, under the claims asserted by each party.

    a.    *Pursuant to the Walnut Creek Manor Complaint*

First and Second Claims (RCRA) : Whether PCE in the soil and groundwater at the MC and WCM Sites was caused or contributed to by the Defendants in violation of Subchapter III of RCRA.

Third Claim (CERCLA Cost Recovery) : Whether Defendants, willfully or negligently, caused a release of PCE and/or other hazardous substances at the MC Site, which has subsequently migrated to the WCM Site; whether WCM's costs incurred, or to be incurred, are necessary response costs according to the National Contingency Plan ("NCP"); whether the Defendants, if liable, are liable on a joint and several basis.

Fourth Claim (CERCLA Contribution) : Whether Defendants, to the extent liable or potentially liable for a CERCLA Cost Recovery action, are liable to WCM for the costs of response and remediation pursuant to Section 113(f) of CERCLA.

Fifth Claim (Private Nuisance): Whether the release of PCE and/or other hazardous materials, if caused by the Defendants' action or inaction, has created a private nuisance, within the meaning of Cal. Civ. Code §3479, at the WCM Site, the MC Site, or elsewhere by causing a special

injury to WCM; whether such nuisance can be reasonably abated within the meaning of *Mangini v. Aerojet-General Corporation*, 12 Cal. 4th 1087 (1996).

Sixth Claim (Public Nuisance): Whether the release of PCE and/or other hazardous materials, if caused by Defendants' action or inaction, constitutes a public nuisance, within the meaning of Cal. Civ. Code §§3479 and 3480, by affecting the larger community.

Seventh Claim (Trespass): Whether the release of PCE and/or other hazardous material at the MC Site has intruded on the WCM Site so as to cause a physical invasion of and interfere with WCM's use and enjoyment of, the WCM Site.

Eighth Claim (Negligence): Whether the Defendants owed a duty to Plaintiff to exercise ordinary care and skill so as not to contaminate the WCM Site with PCE and/or other hazardous material; whether the Defendants breached that duty.

Ninth Claim (Negligence Per Se): Whether the Defendants' handling and/or releasing of PCE and/or other hazardous materials violated applicable state and federal statutes, rules, and regulations establishing the appropriate conduct related to the handling and/or releasing of such materials.

Tenth Claim (Strict Liability): Whether defendants knew, or should have known, that their failure to use reasonable care would create and has created actual harm to WCM.

Eleventh Claim (Equitable Indemnity): Whether, as between Plaintiff and Defendants, Plaintiff is discharging a duty that should have been discharged by Defendants.

Twelfth Claim (Declaratory Relief): Whether the Court should declare that one or more of the Defendants is liable for the contamination on the WCM Site.

b.   *Pursuant to Mayhew Center, Dean Dunivan Cross-Complaint*

First, Second and Third Claims (CERCLA): Whether WCM released a hazardous substance into the environment causing MC to be liable for response costs, now and in the future.

Fourth and Fifth Claim (Public and CERCLA Cost Recovery): Whether WCM negligently conducted themselves so a to place a substantial burden on MC and whether MC can reasonably remedy the problem.

1    Sixth Claim (Negligence): Whether WCM conducted itself in a manner below the standard
2    of care, causing injury to MC.
3    Seventh Claim (Waste): Whether WCM either negligently or intentionally caused waste to
4    the MC Site.
5    Eighth Claim (Hazardous Substance Statutory Indemnity): Whether the release of PCE
6    and/or other hazardous materials, created liability under the California Hazardous Substances
7    Control Act.
8    Ninth Claim (Porter-Cologne Act): Whether the release of PCE and/or other hazardous
9    materials, created liability under the California Porter-Cologne Act.
10   Tenth and Eleventh Claim (Indemnity): Whether WCM based on concepts of equity must
11   indemnify MC for the harm to the MC Site.
12   Twelefth Claim (Declaratory Relief): Whether the Court should declare that WCM is liable
13   for the contamination on the MC Site.
14   Thirteenth Claim (Attorney Fees): Whether MC is entitled to attorney fees under Code of
15   Civil Procedure Section 1021.6.

### 4. Motions

There are no pending motions.

As evidence is developed, the parties may bring motions for partial summary judgment on certain of the legal issues underlying the respective claims. Such motions would likely be filed following discovery. Additionally, WCM may bring a motion to bifurcate the liability and damage phases of trial.

### 5. Amendment of Pleadings

The Parties do not presently anticipate amendments to its complaint. However, if discovery provides information regarding additional parties that are responsible for the soil and/or groundwater contamination at the WCM Site and MC Site, the Parties will identify any appropriate Doe or other parties.

6. **Evidence Preservation**

Neither WCM nor MC has any systematic document destruction program, but the management of both entities have directed their employees not to destroy any documents that are relevant to this action, whether physical or electronic, while this litigation is pending.

7. **Initial Disclosures**

WCM, MC and Dunivan each made initial disclosures as required under FRCP 26(a)(1).

Each of WCM, MC and Dunivan disclosed that they intend to rely on witness familiar with the history and operation of Walnut Creek Manor and Mayhew Center, including employees of both WCM and MC, as well as those of Etch-Tek, Inc., and/or its successors and assigns. Both parties disclosed that they may rely on appropriate representatives of the Regional Water Quality Control Board, San Francisco Bay Region.

Each of WCM, MC and Dunivan disclosed that they will likely rely on the documents within the administrative record being prepared by the Regional Board for administrative writ proceedings. In addition, each party disclosed their intention to rely on the business records, permits, or other documents relating to the history and operations of both the WCM Site and the MC Site.

None of the parties disclosed the existence of any relevant insurance coverage.

8. **Discovery**

Other than the initial disclosure statements required pursuant to FRCP 26(a)(1), which have been served by both WCM and MC, no discovery has been taken directly related to this action. Various environmental reports and historical documents related to the WCM Site and the MC Site were lodged with the Regional Board in connection with its investigation and are available to the parties.

The parties do not currently contemplate any limitations or modifications to the discovery rules. The parties anticipate that discovery will focus primarily on the environmental and historical evidence related to the WCM Site and MC Site, will include depositions of current and former employees of the parties and will likely involve expert witnesses regarding the source and scope of

the contamination. In addition, it is anticipated that the parties will conduct site inspections and environmental sampling and analysis at the Sites.

At this time, the parties do not anticipate seeking any protective orders.

9. **Class Action**

Not applicable.

10. **Related Cases**

Both WCM and MC are each pursuing a writ of administrative mandate, pursuant to Cal. Civ. Code Section 1094.5, in the Contra Costa County Superior Court against the Regional Water Quality Control Board related to a December 14, 2006 Cal. Water Code Section 13267(b) order seeking unnecessary technical reports from each party and its failure to act to enforce prior Section 13267(b) orders. These matters were filed separately but have been consolidated and set for a hearing on July 22, 2008. The administrative record is being prepared and will be lodged with the Superior Court in the near future.

11. **Relief Sought**

Pursuant to the Complaint, Walnut Creek Manor seeks: first, a declaration from this Court declaring that Walnut Creek Manor is not responsible for the PCE contamination and that the Defendants are responsible for the hazardous materials found on the WCM Site and the MC Site; second, damages, including appropriate interest, for the costs of investigation, removal, and response to the hazardous materials contamination at the WCM Site and MC Site; third, attorneys' fees and other costs; fourth, a judgment that Defendants are liable for and must take all necessary action to investigate, remedy and remediate the conditions at the MC Site and WCM Site; and fifth, for additional damages as proven for the diminution in value of the WCM Site and its related businesses.

Pursuant to the Cross-Complaint, Mayhew Center and Dean Dunivan seek identical relief.

12. **Settlement and ADR**

Prior to litigation the parties met to discuss an informal resolution, which was not successful. Walnut Creek Manor, Mayhew Center and Dean Dunivan have stipulated to pursuing Early Neutral Evaluation to be completed by April 19, 2008.

13. **Consent to Magistrate**

The parties do not consent to having this matter presided over by a United States Magistrate Judge.

14. **Other References**

At this time, the parties submit that this action is not suitable for reference to binding arbitration or a special master or any other court reference.

15. **Narrowing of Issues**

a. *Narrowing of Factual Issues*

The parties will discuss whether it is possible to present a statement of stipulated facts on certain background issues regarding the history of each facility as well as certain information developed as part of the public record related to the Regional Board's investigation of the WCM Site and the MC Site.

b. *Bifurcation of Liability and Damages*

WCM believes that it may be appropriate bifurcate the liability and damage phases of this action, as the extent of damages is in part dependent upon what remediation, if any, is appropriate.

16. **Expedited Schedule**

Neither Walnut Creek Manor, Mayhew Center, nor Dean Dunivan believe that this matter can be handled on an expedited basis.

17. **Scheduling**

Although the parties intend to seek the earliest reasonable trial date, until discovery has progressed further establishing a firm cut offs for discovery, expert designation, or dispositive motions is premature as would be establishing a trial date. The parties request a further Case Management Conference in four to six months to consider a realistic schedule.

18. **Trial**

Walnut Creek Manor, Mayhew Center, and Dean Dunivan each demand a jury trial. The trial is currently estimated to last ten or more days.

19. **Disclosure of Non-Party Interested Entities or Persons**

Walnut Creek Manor filed its Certification of Interested Entities and Persons, pursuant to Local Rule 3-16, on January 31, 2008. Mayhew Center and Dean Dunivan are in the process of complying with this requirement.

WCM restates that, pursuant to Local Rule 3-16(d), the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have another kind of interest that could be substantially affected by the outcome of the proceeding:

    1.    Walnut Creek Manor LLC, a California limited liability company (Plaintiff and Cross-Defendant)

    2.    Agile Management LLC, a California limited liability company (related management company)

The individuals listed below are the beneficial owners, through various family trusts and/or other entities, of all of the interests in Walnut Creek Manor LLC and/or Agile Management LLC:

    1.    Ms. Anne O. Boswell
    2.    Ms. Leslie F. Boswell
    3.    Ms. Jamie Boswell Sharp
    4.    Ms. Lucy C. Boswell

20. **Other Matters**

None known.

DUANE MORRIS LLP

Dated: February 26, 2008    By: _____
Brian A. Kelly
Andrew T. Lloyd
Attorney for Plaintiff and Cross-Defendant
WALNUT CREEK MANOR LLC

BASSI, MARTINI, EDLIN & BLUM LLP

Dated: February 26, 2008    By: _____
Fred A. Blum
Attorney for Defendants and Cross-Claimants
MAYHEW CENTER LLC and DEAN DUNIVAN

by Andrew T. Lloyd

DM1/1295111.2