1  Brian A. Kelly (SBN 124738)
   Andrew Thomas Lloyd (SBN 199367)
2  DUANE MORRIS LLP
   One Market Street, Spear Tower, Suite 2000
3  San Francisco, CA 94105
   Telephone: (415) 957-3000
4  Facsimile: (415) 957-3001

5  Attorneys for Plaintiff,
   Walnut Creek Manor LLC
6

7

8               UNITED STATES DISTRICT COURT

9            DISTRICT OF NORTHERN CALIFORNIA

10

11  WALNUT CREEK MANOR, LLC                    NO. C 07 5664

12                    Plaintiff,              WALNUT CREEK MANOR LLC'S
                                              FIRST AMENDED COMPLAINT
13          v.                                FOR:

14  MAYHEW CENTER, LLC, a California limited
    liability company; Dean Dunivan, an individual;    1.  CERCLA COST RECOVERY
15  Etch-Tek, Inc., a former California corporation; and   2.  CERCLA CONTRIBUTION
    DOES 1-50, inclusive,                     3.  FEDERAL DECLARATORY
16                                                RELIEF
17                    Defendants              4.  PRIVATE NUISANCE
                                              5.  PUBLIC NUISANCE
18                                            6.  TRESPASS
                                              7.  NEGLIGENCE
19                                            8.  NEGLIGENCE PER SE
                                              9.  STRICT LIABILITY
20  MAYHEW CENTER, LLC, a California limited   10.  INDEMNITY PURSUANT TO
    liability company; and Dean Dunivan, an individual,   HAZARDOUS SUBSTANCES
21                                               ACCOUNT ACT
                      Cross-Claimants,        11.  INDEMNITY PURSUANT TO
22                                               PORTER-COLOGNE ACT
            v.                                12.  EQUITABLE INDEMNITY
23
    WALNUT CREEK MANOR, LLC,                  DEMAND FOR JURY TRIAL
24
                      Cross-Defendant
25

26

27

28
                                        1

## PARTIES

1.      The Plaintiff, Walnut Creek Manor LLC ("WCM" or "Plaintiff") is a Delaware limited liability company that operates a senior citizen retirement community at 81 Mayhew Way, Walnut Creek, California, in an unincorporated portion of the County of Contra Costa, California. The property and related buildings are owned by WCM and referred to as the "Walnut Creek Manor property."

2.      On information and belief, Defendant Mayhew Center LLC ("MC") is a California limited liability company which owns and/or operates three light industrial and commercial buildings with addresses of 3301, 3313, and 3333 Vincent Road, Pleasant Hill, California. The property and related buildings, both before and after its purchase by MC, are referred to as the "Mayhew Center property."

3.      On information and belief, Defendant Dean Dunivan ("Dunivan"), an individual, is the owner and principal manager of MC and the Mayhew Center property.

4.      On information and belief, Etch-Tek, Inc. ("Etch-Tek"), a former California corporation, was a tenant and/or owner and operator of the building at 3313 Vincent Road, which is part of the Mayhew Center property.

5.      True names and capacities, whether individual, corporate, association, or otherwise, of Defendants named in this action as Does 1-50, inclusive, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that Does 1-50 are responsible for the acts alleged herein and are responsible for the damages to Plaintiff caused thereby.

## JURISDICTION AND VENUE

6.      This case involves a suit by WCM, the owner and operator of a seniors-only apartment complex in Walnut Creek, California against MC, owners and operators of three

1  buildings, which are on the eastern boundary of the Walnut Creek Manor property, Dunivan, Etch-

2  Tek, and Does 1-50, inclusive.

3      7.    This action arises under the federal Comprehensive Environmental Response,

4  Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, et seq., for cost recovery

5  pursuant to §9607 and contribution pursuant to §9613. This court has jurisdiction pursuant to

6  §§9607(a) of CERCLA and pursuant to federal question jurisdiction, 28 U.S.C. § 1331. Plaintiff

7  also maintains claims under various California statutes and common law, which arise out of a

8  common nucleus of operative facts. Accordingly, this court has supplemental jurisdiction over these

9  claims pursuant to 28 U.S.C. §1367.

10     8.    Venue is proper in the Northern District of California under 28 U.S.C. §1391(b) and

11  42 U.S.C. § 9613(b), as this is the District where the release of hazardous substances occurred and

12  the claims asserted arose.

13

14  ## BACKGROUND FACTS AND ALLEGATIONS COMMON

15  ## TO ALL CLAIMS FOR RELIEF

16     9.    This action is brought by WCM. WCM has been the sole owner of the retirement

17  community apartment complex and has continuously operated it since 1964. At no time during the

18  history of WCM's operations has the property been used for any other purpose. Prior to the

19  construction of the retirement community apartment complex, the land had an agricultural use as a

20  walnut orchard.

21     10.   WCM has learned that the soil beneath the retirement community in close proximity

22  to its eastern boundary with the Mayhew Center property is contaminated with tetrachoroethene

23  (also known as perchloroethylene or tetrachloroethylene) ("PCE"). PCE is one of the chemical

24  substances regulated by the federal Environmental Protection Agency. It is listed as a hazardous

25  waste by federal regulation under 40 C.F.R. §261.31 and deemed to be a hazardous material under

26  the California Hazardous Waste Control Act, California Health & Safety Code §25100, et seq.

27     11.   The retirement community WCM operates is located adjacent to the Mayhew Center

28  property, at which various commercial and industrial activities have taken place, including but not

DM2\1439025.2 03166-00001

1   limited to electronics manufacturing and other industrial operations. On information and belief, as a

2   result of operations conducted at the Mayhew Center property, PCE and/or other hazardous

3   substances have been discharged into the soil and/or groundwater at and in the vicinity of the

4   Mayhew Center property. Neither WCM, nor anyone under WCM's control, ever used or

5   discharged PCE.

6        12.    Due to discharges of PCE and/or other hazardous substances as a result of operations

7   conducted at the Mayhew Center property, PCE and/or other hazardous substances have collected in

8   the soil and/or groundwater beneath the Mayhew Center property (the "PCE Plume"). As a result of

9   the detection of PCE and/or other hazardous substances downgradient from the Walnut Creek Manor

10   property, WCM has been forced to expend considerable sums in response. On information and

11   belief, as a result of various industrial, manufacturing and other activities taking place at the

12   Mayhew Center property, PCE and/or other hazardous substances originating from the Mayhew

13   Center property has leached into and been detected in shallow soil samples at the Walnut Creek

14   Manor property in an area immediately adjacent to its eastern boundary with the Mayhew Center

15   property. WCM is not responsible for the PCE and/or other hazardous substances detected in

16   shallow samples collected from its property. Notwithstanding its lack of involvement in the

17   contamination of the soil and/or groundwater with PCE and/or other hazardous substances, WCM

18   has been forced to expend substantial sums of money to investigate soil and groundwater conditions

19   beneath its property. This investigation activity, which included soil and groundwater samples taken

20   directly from the Mayhew Center property, has demonstrated that the soil and groundwater at the

21   Mayhew Center property is heavily contaminated with PCE and/or other hazardous substances and

22   such contamination has leached into the shallow soil at the Walnut Creek Manor property in an area

23   immediately adjacent to its eastern boundary with the Mayhew Center property. This contamination

24   and the continued threatened contamination has decreased the value of the Walnut Creek Manor

25   property and adversely affects WCM's ability to sell or otherwise transfer the property.

26   Furthermore, this contamination has caused WCM to expend substantial sums of money to

27   investigate and analyze the environmental conditions at its property and further investigation and/or

28   remediation activity may be required by the California Regional Water Quality Control Board – San

1   Francisco Bay Region ("Regional Board") and/or other responsible agencies. As WCM is not

2   responsible for the presence of PCE and/or other hazardous substances, either at the Walnut Creek

3   Manor property or at the Mayhew Center property, WCM should not have to bear these expenses

4   and, therefore, seeks recovery from, and a declaration as to, the responsible Defendants.

5        13.    At no time did Plaintiff consent to the presence of PCE or any other hazardous

6   substances at the Walnut Creek Manor property nor has the release of PCE or any other hazardous

7   substances at the Mayhew Center property or by any Defendant been exempted pursuant to 40

8   C.F.R. §§260.20 and 260.22.

9        14.    The Walnut Creek Manor property has been in use as a residential seniors-only

10  apartment complex since 1964. In that time, it has never been used for any purpose other than as a

11  seniors-only residence.

12       15.    Plaintiff is informed and believes and thereon alleges that while Etch-Tek was a

13  tenant at and/or owner of the building at 3313 Vincent Road (a building which included Etch-Tek's

14  3317 Vincent Road address and is now owned by MC) from 1975 to 1982, it was engaged in the

15  electronics manufacturing business, including the manufacturing of electronic circuit boards, a

16  process known to use chemical solvents, including PCE.

17       16.    Plaintiff is informed and believes and thereon alleges that while Etch-Tek was a

18  tenant and/or owner of the building at 3313 Vincent Road, it used chlorinated solvents, including

19  PCE, as part of its manufacturing process.

20       17.    Plaintiff is informed and believes and thereon alleges that Etch-Tek erected a storage

21  or disposal tank in the parking lot of the building at or near 3313 Vincent Road. This tank was

22  present during the Etch-Tek electronic manufacturing operations and was removed at or near the

23  time Etch-Tek vacated the Mayhew Center property.

24       18.    Plaintiff is informed and believes and thereon alleges that after Etch-Tek moved its

25  operations to a new facility at 2245 Bates Drive, Concord, California, it continued its operations in

26  the electronic manufacturing business, and relocated the storage or disposal tank from its previous

27  Mayhew Center location to its new Concord facility.

28

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION
AND FOR CERTAIN STATE LAW CLAIMS

DM2\1439025.2 03166-00001

19.     Plaintiff is informed and believed and thereon alleges that the soil and groundwater at the Etch-Tek Concord facility has also been contaminated with PCE in areas proximate to the location of the relocated tank.

20.     Plaintiff is informed and believes and thereon alleges that PCE leaked into the soil and groundwater below the building at 3313 Vincent Road as well as below the storage or disposal tank that was located in the parking lot and next to its exposed soil planter bed that runs adjacent to and along its property boundary with the Walnut Creek Manor property.

21.     Plaintiff is informed and believes and thereon alleges that, based on a number of samples taken and analyzed by licensed environmental professionals retained by WCM in compliance with a California Water Code Section 13267(b) site investigation demand made by the Regional Board, the PCE contamination has spread from a PCE hotspot known to exist at or near the previous location of the storage or disposal tank at the Mayhew Center property.

22.     Plaintiff is informed and believes and thereon alleges that the PCE contamination has, over time, spread both vertically down from the surface under the Mayhew Center property and laterally primarily along the groundwater gradient (generally to the northeast) but has also spread radially through the soil from the Mayhew Center source of PCE contamination, such that certain PCE contamination originating from the Mayhew Center property now is present in shallow soil at the Walnut Creek Manor property.

23.     Plaintiff is informed and believes and thereon alleges that the PCE contamination from the Mayhew Center property has migrated onto the Walnut Creek Manor property.

## FIRST CLAIM FOR RELIEF (CERCLA COST RECOVERY)

24.     Plaintiff realleges and incorporates paragraphs 1 through 23 inclusive, by reference as though set forth in full herein.

25.     The Walnut Creek Manor property and the Mayhew Center property, at all times relevant herein, are each a "Facility" as defined under Section 101(9) of CERCLA, 42 U.S.C. §9601(9).

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION
AND FOR CERTAIN STATE LAW CLAIMS
DM2\1439025.2 03166-00001

26.    Plaintiff is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. §9601(21) that has incurred costs under Section 107(a) of CERCLA, 42 U.S.C. §9607(a).

27.    MC is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a liable "Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

28.    Dean Dunivan is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which he was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a liable "Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

29.    Etch-Tek, is a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and was, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and a liable "Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

30.    Does 1-50 are each a "Person" as defined under Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and were, during the period in which it was in possession and use of the Mayhew Center property, an "Owner" and "Operator" of the Mayhew Center property as defined under Section 101(20)(A) of CERCLA, 42 U.S.C. §9601(20)(A), and liable "Person" under Section 107(a)(1) of CERCLA, 42 U.S.C. §9607(a).

31.    MC and/or Dunivan had a "Contractual Relationship," as defined under §9601(35) of CERCLA, with the previous owners of the Mayhew Center property in that Plaintiff is informed and believes and thereon alleges that, at the time of the purchase of the Mayhew Center property, MC and/or Dunivan either knew, or had reason to know, that that hazardous substances were used and disposed of on, in, or at the Mayhew Center property.

DM2\1439025.2 03166-00001

32.   Plaintiff is informed and believes and thereon alleges that the Defendants, and each of them, operated and/or owned the Mayhew Center property where hazardous substances, including PCE, have been discharged and/or released and/or have continued to migrate into the environment on and under the Mayhew Center property.

33.   Plaintiff, a passive non-negligent record title owner of the Walnut Creek Manor property, has been required to incur, and may continue to be required to incur costs of response to investigate and remediate hazardous substances on, at, or under the Walnut Creek Manor property and/or the Mayhew Center property despite the fact that Plaintiff did not cause or contribute to the release of the hazardous substances. Defendants, and each of them, due to their acts of negligence and/or willful misconduct in the release, discharge and disposal of hazardous substances, are absolutely and strictly liable, on a joint and several basis, for all necessary costs of response to investigate and remediate the release of, or threat of release of, hazardous substances at the Mayhew Center property and/or the Walnut Creek Manor property and to hold Plaintiff harmless for all such costs.

34.   As a direct and proximate result of the wrongful release, discharge, dispersal and disposal of hazardous substances by Defendants at the Mayhew Center property, which have migrated to the Walnut Creek Manor property, Plaintiff has incurred and may continue to incur, costs of testing, investigation, and remediation of the releases, and threatened releases of hazardous substances into the soil, subsoil, and groundwater at, under, and emanating from Mayhew Center property.

35.   Any costs Plaintiff has incurred, or will incur, including attorneys' fees expended in this action are, and will be, necessary costs of response consistent with the National Contingency Plan ("NCP") within the meaning of Section 107(a) of CERCLA, 42 U.S.C. §9607(a). Accordingly, Plaintiff is entitled to reimbursement for all such past, present and future costs, together with interest, from the Defendants, jointly and severally, pursuant to Section 9607(a).

///

///

///

DM2\1439025.2 03166-00001

## SECOND CLAIM FOR RELIEF (CERCLA CONTRIBUTION)

36.    Plaintiff realleges and incorporates paragraphs 1 through 35, inclusive, by reference as though set forth in full herein.

37.    Plaintiff, a passive non-negligent record title owner of the Walnut Creek Manor property, has been required to incur, and may continue to be required to incur costs of response to investigate and remediate hazardous substances on, at, or under the Walnut Creek Manor property and/or the Mayhew Center property despite the fact that Plaintiff did not cause or contribute to the release or presence of the hazardous substances. Defendants, and each of them, due to their acts of negligence and/or willful misconduct in the release, discharge, dispersal and disposal of hazardous substances, are absolutely and strictly liable, on a joint and several basis, for all necessary costs of response to investigate and remediate the release of, or threat of release of, hazardous substances at the Mayhew Center property and/or the Walnut Creek Manor property and to hold Plaintiff harmless for all such costs.

38.    As a direct and proximate result of the disposal of such hazardous substances by Defendants at the Mayhew Center property and the Walnut Creek Manor property, Plaintiff has incurred and may continue to incur, costs for testing, investigation and remediation of the releases, and threatened releases of hazardous substances into the soil, subsoil, and groundwater at, under and emanating from the Mayhew Center property.

39.    Any costs Plaintiff has incurred, or will incur, including attorneys' fees expended in this action are, and will be, necessary costs of response consistent with the National Contingency Plan ("NCP") within the meaning of Section 107(a) of CERCLA, 42 U.S.C. §9607(a). Accordingly, Plaintiff is entitled to reimbursement for all such past, present and future costs, together with interest, from the Defendants, jointly and severally, pursuant to Section 9607(a)

40.    Plaintiff is afforded the right under Section 113(f) of CERCLA, 42 U.S.C. §9613(f) to seek contribution during or following any action under Section 107(a) of CERCLA from any other party who is liable or potentially liable under Section 107(a) for necessary costs of response incurred by Plaintiff for the investigation and remediation of the release of chemical contamination. Plaintiff

9

DM2\1439025.2 03166-00001

1    is entitled to contribution from Defendants pursuant to Section 113(f), for all necessary costs of

2    response, together with interest or court costs.

3

4    **THIRD CLAIM FOR RELIEF (FEDERAL DECLARATORY RELIEF)**

5        41.    Plaintiff realleges and incorporates paragraphs 1 through 40, inclusive, by reference

6    as though set forth in full herein.

7        42.    An actual controversy exists between Plaintiff and Defendants in that Plaintiff claims

8    that Defendants, and each of them, jointly and severally, are obligated to indemnify Plaintiff against,

9    and reimburse Plaintiff for, all necessary Response Costs and any other costs and attorneys fees

10   heretofore or hereafter incurred by Plaintiff in responding to the Release and threatened Release of

11   hazardous substances or taking any other removal or remedial action as a result of Defendants' acts

12   and conduct. Defendants deny such an obligation.

13       43.    Substantial costs will be incurred by Plaintiff prior, during and at the conclusion of

14   this action. Unless declaratory relief is granted, it will be necessary for Plaintiff to commence

15   successive actions against Defendants, and each of them, to secure compensation for the costs

16   incurred and damages sustained.

17       44.    Plaintiff is entitled to and hereby seeks a declaratory judgment, pursuant to CERCLA

18   §113(g)(2), 42 U.S.C. §9613(g)(2), under which this Court "shall enter a declaratory judgment on

19   liability for response costs."

20       45.    Plaintiff is entitled to, and hereby seeks, a judicial determination pursuant to the

21   Federal Declaratory Relief Act, 28 U.S.C. §2201, concerning the source and origin of the hazardous

22   substances present in the soil and/or groundwater and as to Plaintiff's right to reimbursement from

23   and indemnification by Defendants, and each of them, jointly and severally, for all costs Plaintiff

24   may incur as a result of the hazardous substances emanating from the Mayhew Center property.

25

26   **FOURTH CLAIM FOR RELIEF (PRIVATE NUISANCE)**

27       46.    Plaintiff realleges and incorporates paragraphs 1 through 45, inclusive, by reference

28   as though set forth in full herein.

47.    WCM is informed and believes, and on that basis alleges, that as a direct and proximate result of Defendants' actions, including but not limited to the disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action, including but not limited to their failure to investigate and remediate soil and/or groundwater and to abate the presence of such hazardous substances, including PCE, Plaintiff has been harmed by, including but not limited to, contaminated soil and/or groundwater at or near the Walnut Creek Manor property. Thus, Defendants are interfering with and precluding WCM's free use and enjoyment of its property, and are threatening to impair and injure the health of WCM and other individuals who would live at, visit, conduct business or otherwise utilize the property.

48.    Defendants' actions and inactions, as alleged, have caused and are causing injury to the property and to WCM. WCM did not authorize, sanction or agree to Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE.

49.    The contamination in the soil at and around the Walnut Creek Manor property is migrating and will continue to migrate. As the contaminants migrate, the damage to the property worsens and will continue to worsen into the future. Each day that hazardous substances released by Defendants remain at and migrate onto the Walnut Creek Manor property, or remain at and migrate from the Mayhew Center property, the nuisance continues. Accordingly, as a result of Defendants' disposal, discharge, depositing, dumping, abandonment and release of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action, including but not limited to their failure to investigate and to remediate soil and/or groundwater and to abate the presence of such hazardous substances, including PCE, the contamination currently existing in the soil under the Walnut Creek Manor property which can be reasonably abated, remediated or cleaned up by Defendants or other entities, constitutes a continuing private nuisance.

50.    Defendants' actions and/or inactions, as alleged, and the resultant private nuisance, has directly and proximately caused damages to WCM, including, but not limited to, a decrease and diminution in the value of the Walnut Creek Manor property, and undetermined damages due to the

11

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION AND FOR CERTAIN STATE LAW CLAIMS

DM2\1439025.2 03166-00001

stigma caused by the contamination of the surface and subsurface soil, the environment on and around the Walnut Creek Manor property, which impairs WCM's ability to either sell or secure a loan against its property, and the uncertainty regarding future contamination and damages, as well as other damages set forth above, including other consequential, incidental and general damages to be proven at trial.

51.    The presence of hazardous substances at the Mayhew Center property, the Walnut Creek Manor property, and any other property so affected by the PCE Plume constitutes a "nuisance" within the meaning of Cal. Civ. Code §3479, in that they are injurious to the health of Plaintiff, and the presence of hazardous substances interferes with Plaintiff's free use and comfortable enjoyment of its property.  The nuisance created by Defendants at the Mayhew Center property affects, at the same time, a considerable number of persons in that the hazardous substances present at the Mayhew Center property and the Walnut Creek Manor property may continue to migrate from and/or impact the surrounding environment by impacting groundwater and thereby prevent public use of such water sources due to the presence of the hazardous substances or any hazardous chemical constituents.  The nuisance causes special injury to Plaintiff in that the use and encumbrance of the Walnut Creek Manor property are being interfered with due to the existence of the contamination and the extensive investigation required to determine the nature and extent of the presence of the hazardous substances, the risk that such hazardous substances present to the senior-citizen residents of the Walnut Creek Manor property, and the remedial action that is or may become necessary to abate the nuisance.

52.    At all material times, Defendants, and each of them, had a duty not to permit or allow the continuance of a nuisance at, under, or emanating from the Mayhew Center site.  Defendants, and each of them, have breached and are breaching that duty by their failure to undertake reasonable investigation and remediation, by allowing hazardous substances to remain at and/or migrate from the Mayhew Center property and Walnut Creek Manor property.  Defendants, and each of them, will continue to maintain the nuisance unless restrained by this Court.

53.    The contamination caused and/or allowed to continue by Defendants on or under the Mayhew Center property, which has migrated to the Walnut Creek Manor property, constitutes a

1  continuing nuisance, which is subject to substantial or complete abatement, utilizing commonly

2  available environmental engineering techniques required by applicable government regulations.

3  Moreover, such abatement can be performed in a reasonable manner within the meaning of *Mangini*

4  *v. Aerojet-General Corporation*, 12 Cal. 4th 1087 (1996).

5      54.    Unless Defendants, and each of them, are required to remove the existing

6  contamination, it will be necessary for Plaintiff to commence many successive actions against

7  Defendants, and each of them, to secure compensation for damages sustained. If Defendants are not

8  required to remove the contamination, Plaintiff will suffer irreparable harm, in that the value and

9  usefulness of the Walnut Creek Manor property will be affected.

10      55.    Whether as direct result of Defendants' actions, or as a result of their being a

11  successive owner of the Mayhew Center property, as provided by Cal. Civ. Code §3483, the

12  Defendants are liable for all consequences and damages and costs of arising from their failure to

13  abate a continuing nuisance, including but not limited to a series of soil and groundwater

14  investigations, additional discharge characterization, cleanup, and appropriate remediation costs

15  necessary and appropriate to restore the Walnut Creek Manor property to its original condition, and

16  otherwise comply with the requirements of applicable governmental entities having jurisdiction,

17  including but not limited to, Contra Costa County, the Regional Board, and the State of California.

18      56.    As a direct and proximate result of the nuisance created and maintained by

19  Defendants, and each of them, the value of the Plaintiff's property has been diminished in an amount

20  to be proven at trial. Unless the nuisance is abated, Plaintiff's property will continue to diminish in

21  value.

22      57.    As a direct and proximate result of the nuisance which resulted from the action and/or

23  inaction by these Defendants while the Mayhew Center property was under their control or occupied

24  by them, these Defendants should be required to remove contamination and compensate Plaintiff for

25  damages to be proven at trial.

26      58.    Because Plaintiff has no speedy or adequate remedy at law, injunctive relief is

27  expressly authorized under Section 731 of the California Code of Civil Procedure.

28

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION
AND FOR CERTAIN STATE LAW CLAIMS

DM2\1439025.2 03166-00001

1

### FIFTH CLAIM FOR RELIEF (PUBLIC NUISANCE)

2    59.    Plaintiff realleges and incorporates paragraphs 1 through 58, inclusive, by reference

3    as though set forth in full herein.

4    60.    Defendants' disposal, discharge, depositing, dumping, abandonment and release of

5    chemicals, contaminants and hazardous substances, including PCE, or Defendants' failure to take

6    action to remediate soil and/or groundwater from the presence of such hazardous substances,

7    including PCE, have allowed such hazardous substances, including PCE, into the surface and

8    subsurface soil and the environment on and around the Walnut Creek Manor property, gives rise to a

9    public nuisance that affects not only the Walnut Creek Manor property but the communities of

10   Walnut Creek, Pleasant Hill and the surrounding area.  Because the chemicals, contaminants and

11   hazardous substances, including PCE, have spread and threaten to continue to spread to adjacent

12   properties, including under public streets and sidewalks, and have polluted the soils and groundwater

13   of the State of California, it is of great public concern.  The chemicals, contaminants and hazardous

14   substances, including PCE in, under and around the Walnut Creek Manor property substantially

15   devalues the property, and have caused WCM monetary damages, and WCM has therefore suffered

16   injuries different in kind from those suffered by the general public.

17   61.    WCM alleges that as a proximate result of the chemicals, contaminants and hazardous

18   substances, including PCE, having been released and discharged onto its property, the property has

19   been permanently damaged.  Defendants' disposal, discharge, depositing, dumping, abandonment

20   and release of chemicals, contaminants and hazardous substances, including PCE, into the surface

21   and subsurface soil and the environment on and around the Walnut Creek Manor property or

22   Defendants' failure to take action to remediate soil and/or groundwater from the presence of such

23   hazardous substances, including PCE, and the resultant continuing nuisance, has directly and

24   proximately caused damages to WCM, including, but not limited to, a decrease and diminution in the

25   value of the Walnut Creek Manor property, and undetermined damages due to the stigma caused by

26   the contamination of the surface and subsurface soil, the environment in and around the Mayhew

27   Center property, and the Walnut Creek Manor property, which condition has impaired WCM's

28   ability to either sell or secure a loan against its property.  At the same time, the releases and

14

1  discharges of chemicals, contaminants and hazardous substances, including PCE, by Defendants has

2  affected the entire community and the comfort, convenience and health of a considerable number of

3  persons, although the extent of the annoyance, danger, and damage inflicted upon the residents of the

4  surrounding communities may be unequal.

5      62.    The presence of hazardous substances at the Mayhew Center property, the Walnut

6  Creek Manor property, and any other property so affected by the PCE Plume constitutes a

7  "nuisance" within the meaning of Cal. Civ. Code §3479, and a "public nuisance" within the meaning

8  of Cal. Civ. Code §3480.

9      63.    The abatement of the nuisance will result in the enforcement of important rights that

10  affect the public interest, in that a significant benefit will be conferred on the general public,

11  including but not limited to, the hundreds of senior residents of Walnut Creek Manor and others in

12  the vicinity of the Mayhew Center property. This action (a) raises strong issues of public importance

13  and policy which are in need of vindication by legal action; (b) presents the necessity for private

14  enforcement of said issues and rights, the resulting burden of which falls on WCM; and (c) will

15  benefit the health and safety of the community. Accordingly Plaintiff is entitled to an award of

16  attorney's fees pursuant to the provisions of California Code of Civil Procedure §1021.5. Because

17  significant benefits will be conferred on the general public, the necessity and financial burden of

18  private enforcement are such as to make an award appropriate.

19      64.    WCM demands that it recover its reasonable attorneys' fees and costs incurred in

20  prosecuting this action.

21

22      **SIXTH CLAIM FOR RELIEF (TRESPASS)**

23      65.    Plaintiff realleges and incorporates paragraphs 1 through 64, inclusive, by reference

24  as though set forth in full herein.

25      66.    Defendants' disposal, discharge, depositing, dumping, abandonment and release of

26  chemicals, contaminants and hazardous substances, including PCE, and/or failure to investigate,

27  remediate and abate such contaminants has intruded upon the Walnut Creek Manor property in such

28

DM2\1439025.2 03166-00001

1  a manner as to cause a physical invasion of the Walnut Creek Manor property and to interfere with

2  WCM's possession, use and enjoyment of its property.

3      67.    Plaintiff is informed and believes and thereupon alleges that the Defendants, and each

4  of them, trespassed on the Walnut Creek Manor property, and/or allowed a trespass to be committed

5  on the Walnut Creek Manor property during the time they had, and exercised ownership and/or

6  control over the Mayhew Center property by their actions in disposing of hazardous substances

7  and/or allowing hazardous substances to be disposed of or present on the Mayhew Center property,

8  and/or failing to take action to investigate and remediate soil and/or groundwater and to abate the

9  contamination, and allowing such hazardous substances to migrate onto the Walnut Creek Manor

10  property.  Such hazardous substances at the Walnut Creek Manor property continue to affect the soil

11  and/or groundwater and/or continue to encroach upon the Walnut Creek Manor property, thereby

12  constituting a continuing trespass.

13      68.    Plaintiff is informed and believes and thereupon alleges that at the time they had and

14  exercised control and/or ownership over the Mayhew Center property, Defendants, and each of

15  them, breached their duty of care and negligently operated the Mayhew Center property in a manner

16  that resulted in the discharge of hazardous substances into the soil and groundwater and that the

17  Defendants, and each of them, were aware or should have been aware of the presence of hazardous

18  substances at the Mayhew Center property, that it was foreseeable to the Defendants that the Plaintiff

19  could be harmed by the presence of such hazardous substances, and could have reasonably avoided

20  harm to the Plaintiff.

21      69.    As a proximate result of this continuing trespass, Plaintiff has been damaged to date

22  in an amount to be proven at trial.

23

24          **SEVENTH CLAIM FOR RELIEF (NEGLIGENCE)**

25      70.    Plaintiff realleges and incorporates paragraphs 1 through 69, inclusive, by reference

26  as though set forth in full herein.

27      71.    At the time they had and exercised control and/or ownership over the Mayhew Center

28  property, Defendants, and each of them, owed a duty to Plaintiff to exercise ordinary care and skill,

DM2\1439025.2 03166-00001

1  so that the hazardous substances would not contaminate the soil and/or the groundwater at or under

2  the Walnut Creek Manor property, as it was reasonably foreseeable that as a result of such lack of

3  care, the owners of Walnut Creek Manor and/or other persons or entities would suffer damages,

4  including those relating to the investigation and clean up of contamination of the soil and/or

5  groundwater.

6       72.    Plaintiff is informed and believes and thereupon alleges that at the time they had and

7  exercised control and/or ownership over the Mayhew Center property, Defendants, and each of

8  them, breached their duty of care and negligently conducted their business operations in a manner

9  that resulted in the hazardous substances contamination of the soil and groundwater.  Moreover,

10  Defendants, and each of them, were aware or should have been aware of the presence of hazardous

11  substances at the Mayhew Center property and that it was foreseeable to the Defendants that the

12  Plaintiff could be harmed by the presence of such hazardous substances, and Defendants could have

13  reasonably avoided harm to the Plaintiff.

14       73.    Defendants have failed to take any action to properly characterize, investigate,

15  remediate or abate the contamination present at and migrating from the Mayhew Center property,

16  despite numerous demands for such investigation and site characterization work and a Notice of

17  Violation from the Regional Board.

18       74.    Upon being informed of the presence of PCE and other hazardous substances in soil

19  and groundwater at and beneath the Mayhew Center property, Defendants had a duty to take

20  reasonable steps to investigate, remediate, abate and mitigate such contamination.

21       75.    As a proximate result of the Defendants' failure to investigate as directed and/or take

22  reasonable mitigation, abatement or remediation efforts, Plaintiff has been damaged in an amount to

23  be proven at trial.

24

25                  **EIGHTH CLAIM FOR RELIEF (NEGLIGENCE PER SE)**

26       76.    Plaintiff realleges and incorporates paragraphs 1 through 75, inclusive, by reference

27  as though set forth in full herein.

28

DM2\1439025.2 03166-00001

77.    Defendants' conduct, including their failure to exercise due care and improperly and negligently collecting, using, storing, disposing of chemicals, contaminants and hazardous substances, including PCE, and/or Defendants' failure to take action to investigate, remediate or abate soil and/or groundwater contamination emanating from Mayhew Center property, violated various state and federal statutes, rules and regulations which set a standard of care and conduct intended to protect WCM, its property and others similarly situated, and the local environment. Additionally, Defendants have repeatedly failed to conduct investigation and other activities, including those directed by the Regional Board and/or other responsible agencies as required pursuant to the California Water Code, other statutes, rules, and regulations.  Therefore such improper activities and violations of law constitute negligence *per se*.

78.    Pursuant to California Water Code §§ 13241, 13260, 13264, 13265, 13267, and 13385, which sections prohibit the discharge of any waste or material that could affect the quality of waters of the state, including groundwater, Defendants, and each of them, owed a duty of care to Plaintiff not to contaminate the soil and groundwater at and below the Walnut Creek Manor property.

79.    As owners, operators, lessors, lessees, and/or managers of the property in the immediate vicinity of the Walnut Creek Manor property, Defendants specifically violated the provisions of California Health & Safety Code §5411, which provides that "no person shall discharge sewage or other waste, or the effluent of treated sewage or other waste, in any manner which will result in contamination, pollution or a nuisance."

80.    Pursuant to §9607(a) of CERCLA, which holds liable the owner of any facility for the costs associated with all necessary response costs incurred by any other person consistent with the national contingency plan, Defendants, and each of them, owed a duty of care to Plaintiff not to cause the release of hazardous substances at the Mayhew Center property such that Plaintiff would be required to incur response costs.

81.    The violation of the aforementioned provisions of the California Water Code and Health & Safety Code, of CERCLA, and other potentially applicable statutes by Defendants

18

1  proximately cause trespass and nuisance to the Walnut Creek Manor property, diminution of value to

2  the property, and further consequential, incidental and general damages to WCM.

3      82.    The violation of the aforementioned provisions of the California Water Code and

4  Health & Safety Code, of CERCLA, and other potentially applicable statutes were intended to

5  prevent this type of injury to WCM and its property, and WCM is a member of the class of persons

6  for whose protection these statutes were adopted.

7      83.    As a proximate result of Defendants' violations of the statute set forth herein, and

8  negligence *per se*, WCM has suffered and will continue to suffer consequential, incidental and

9  general damages, in an amount to be proven at trial.

10

11          **NINTH CLAIM FOR RELIEF (STRICT LIABILITY)**

12      84.    Plaintiff realleges and incorporates paragraphs 1 through 83, inclusive, by reference

13  as though set forth in full herein.

14      85.    Defendants knew, or should have known, that their failure to use reasonable care in

15  controlling, monitoring, maintaining and operating their property and in collecting, using, storing,

16  disposing of, and causing to be disposed of chemicals, including PCE and/or other hazardous

17  substances, would create and has created actual harm to WCM and others.  Defendants knew or

18  should have known that there existed, and still exists, a certainty of harm to others, including WCM,

19  that would result from the disposing of, discharging, depositing, releasing, and allowing the release

20  of PCE and/or other hazardous substances into the soil and/or groundwater on and around the

21  Walnut Creek Manor property.

22      86.    Defendant's handling, use, storage, and/or disposal of hazardous substances,

23  including PCE, on or adjacent to the Mayhew Center property constituted an ultrahazardous activity.

24      87.    As a proximate result of the acts of these Defendants, and each of them, in the course

25  of their ultrahazardous activity as alleged above, Plaintiff has suffered damages in an amount to be

26  proven at trial.

27  ///

28  ///

DM2\1439025.2 03166-00001

## TENTH CLAIM FOR RELIEF (CONTRIBUTION UNDER
## HAZARDOUS SUBSTANCES ACCOUNT ACT)

88.    Plaintiff realleges and incorporates paragraphs 1 through 87, inclusive, by reference as though set forth in full herein.

89.    Plaintiff is afforded the right under Section 25300, et seq., of the California Health and Safety Code to seek contribution or indemnity from anyone who is liable pursuant to the Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA").

90.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, were operators and/or owners of the Mayhew Center property during the time that contamination occurred or that such Defendants had a "Contractual Relationship," within the meaning of 42 U.S.C. §9601(35) (as incorporated by Cal. Health and Safety Code §25323.5(b)) with the parties who were operators and/or owners of the Mayhew Center property during the time such contamination occurred.

91.    Plaintiff has spent and will continue to spend funds for the necessary removal and remedial activities under HSAA.

92.    If the Court concludes that the Defendants, or any of them, is liable under Health and Safety Code 25300 et seq., then Plaintiff is entitled to contribution or indemnity from Defendants, in whole or in part, pursuant to Health and Safety Code §25363.

## ELEVENTH CLAIM FOR RELIEF (CONTRIBUTION UNDER PORTER-COLOGNE ACT)

93.    Plaintiff realleges and incorporates paragraphs 1 through 92, inclusive, by reference as though set forth in full herein.

94.    The Porter-Cologne Act (California Water Code §§13000 et seq.) provides for statutory contribution to those persons who become liable for the investigation, cleanup and remediation of hazardous substances contamination to groundwater. To the extent Plaintiff incurs and has incurred costs and expenses in connection with the hazardous substances emanating from the Mayhew Center property, Plaintiff is statutorily entitled to contribution from Plaintiff, and each of

DM2\1439025.2 03166-00001

1  them, pursuant to Water Code section 13550(i), and hereby seeks contribution and indemnification

2  pursuant to that section against the Defendants, and each of them.

3      95.    Plaintiff contends that the Defendants, and each of them, are responsible for the

4  releases of hazardous substances at the Mayhew Center property, which hazardous substances have

5  migrated to the Walnut Creek Manor property.

6      96.    If the Court concludes that Plaintiff is liable to any Defendant under the Water Code,

7  then Plaintiff is entitled to contribution from such Defendants on the basis that Defendants caused

8  the contamination.

9

10  **TWELFTH CLAIM FOR RELIEF (EQUITABLE INDEMNITY)**

11      97.    Plaintiff realleges and incorporates paragraphs 1 through 96, inclusive, by reference

12  as though set forth in full herein.

13      98.    To the extent any Defendant is not liable under CERCLA for cost recovery and/or

14  certain costs are not available under CERCLA or such costs exceed those allowed under CERCLA,

15  Plaintiff is entitled to equitable indemnification in complying with various site investigation

16  requirements of the Regional Board related to the PCE and/or hazardous substances contamination at

17  the Walnut Creek Manor property and Mayhew Center property, Plaintiff has discharged a duty and

18  continues to discharge a duty which is owed by Plaintiff, but as between Plaintiff and the

19  Defendants, and each of them, should have been discharged by Defendants.  Plaintiff is entitled to

20  indemnity from Defendants, and each of them, for all costs that Plaintiff has incurred to date, and all

21  costs that Plaintiff will incur in the future.

22

23  **DEMAND FOR JURY TRIAL**

24      99.    WCM hereby demands a jury trial.

25  ///

26  ///

27  ///

28  ///

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION
AND FOR CERTAIN STATE LAW CLAIMS

DM2\1439025.2 03166-00001

# **PRAYER FOR RELIEF**

**WHEREFORE**, Walnut Creek Manor, LLC prays for relief as follows:

1.    That the court issue a judgment declaring Defendants, and each of them, liable for the costs of investigating and remedying the release of hazardous substances at and in the vicinity of the Walnut Creek Manor property.

2.    That the court issue a judgment declaring that, as to Plaintiff, the release of hazardous substances occurred solely due to actions by third parties, and that Plaintiff is not liable for any costs of investigating or remedying the release of hazardous substances.

3.    That the court award Plaintiff the costs of investigation, removal and response costs that it has incurred as a result of the release of the hazardous substances at the Mayhew Center property and their migration onto the Walnut Creek Manor property.

4.    That the court award Plaintiff the costs of investigation, removal and response costs that it will incur in the future as a result of the release of the hazardous substances at the Mayhew Center property and their migration onto the Walnut Creek Manor property, in an amount according to proof.

5.    That the court award to Plaintiff such other damages as may be provided by law or equity in an amount according to proof.

6.    That the court award Plaintiff prejudgment interest on all investigation,` removal and response costs incurred, and any other interest according to law.

7.    That the court award Plaintiff its attorneys' fees, per contract or otherwise, costs and disbursements incurred in responding to the release of hazardous substances, and in prosecuting this action.

8.    That the court issue a judgment declaring that the PCE contamination at issue in this action originated on the Mayhew Center property and that the PCE contamination at issue did not originate on the Walnut Creek Manor property.

9.    That the court issue a judgment declaring that Defendants are liable for all actions and activities necessary to investigate, abate and remedy the conditions at the Mayhew Center property and Walnut Creek Manor property that may present an imminent and substantial endangerment to

22

WALNUT CREEK MANOR LLC's FIRST AMENDED COMPLAINT FOR CERCLA COST RECOVERY, CERCLA CONTRIBUTION AND FOR CERTAIN STATE LAW CLAIMS

DM2\1439025.2 03166-00001

1  health or the environment, and to eliminate any risks to health or the environment posed by solid or

2  hazardous wastes at the Mayhew Center property and Walnut Creek Manor property, and for costs of

3  litigation (including reasonable attorneys' fees and expert witness fees).

4    10.    That the court order Defendants to undertake and perform all actions and activities

5  necessary to investigate, abate and remedy the conditions at the Mayhew Center property and

6  Walnut Creek Manor property that may present an imminent and substantial endangerment to health

7  or the environment, and to eliminate any risks to health or the environment posed by solid or

8  hazardous wastes at the Mayhew Center property and Walnut Creek Manor property, and for costs of

9  litigation (including reasonable attorneys' fees and expert witness fees).

10    11.    That the court order Defendants to remediate the Mayhew Center property and

11  Walnut Creek Manor property as required by law and/or equity.

12    12.    For retention of jurisdiction by the court of this matter until such time as Defendants

13  have implemented and effectuated all appropriate remedial measures to address the release or

14  threatened release of hazardous substances at the Mayhew Center property and their migration to the

15  Walnut Creek Manor property.

16

17

18                    Respectfully Submitted,

19  DATED: MAY 19, 2008          DUANE MORRIS LLP

20

21                    Brian A. Kelly

22                    Andrew T. Lloyd
                    Attorneys for Walnut Creek Manor, LLC

23

24

25

26

27

28

DM2\1439025.2 03166-00001

## PROOF OF SERVICE

*Mayhew Center, LLC v. Regional Water Quality Control Board, San Francisco Bay Region*
USDC, Northern District, Case No. N07-0513 [Lead Case]
[Consolidated with *Walnut Creek Manor v. Mayhew Center, LLC, et al.*
USDC, Northern District, Case No. N07-0557]

    I am a citizen of the United States, over the age of 18 years, and not a party to or interested in the cause. I am an employee of Duane Morris LLP and my business address is One Market, Spear Tower, Suite 2000, San Francisco, California 94105. I am readily familiar with this firm's practices for collecting and processing correspondence for mailing with the United States Postal Service and for transmitting documents by FedEx, fax, email, courier and other modes. On May 19, 2008, I served the following documents:

**WALNUT CREEK MANOR LLC'S FIRST AMENDED COMPLAINT FOR:**

1. **CERCLA COST RECOVERY**
2. **CERCLA CONTRIBUTION**
3. **FEDERAL DECLARATORY RELIEF**
4. **PRIVATE NUISANCE**
5. **PUBLIC NUISANCE**
6. **TRESPASS**
7. **NEGLIGENCE**
8. **NEGLIGENCE PER SE**
9. **STRICT LIABILITY**
10. **INDEMNITY PURSUANT TO HAZARDOUS SUBSTANCES ACCOUNT ACT**
11. **INDEMNITY PURSUANT TO PORTER-COLOGNE ACT**
12. **EQUITABLE INDEMNITY**

**DEMAND FOR JURY TRIAL**

on below listed interested party(ies) in this action by serving electronically and the transmission was reported as complete and without error:

1.    **Fred M. Blum Esq.**                    **Attorney for Defendant**
      **Jonathan E. Meislin Esq.**           **MAYHEW CENTER, LLC**
      **BASSI MARTINI EDLIN & BLUM LLP**    **Phone: (415) 403-4421**
      **Suite 200**                            **Fax: (415) 397-1339**
      **351 California Street**              **E-mail: fblum@bmeblaw.com**
      **San Francisco CA 94104**           **E-mail: jmeislin@bmeblaw.com**

     ☒    **BY ELECTRONIC SERVICE:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmissions, I caused such documents to be sent to the persons at the e-mail address listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on May 19, 2008, in San Francisco, California.



Blanca A. Herrera

1