IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 07-05664 CW

WALNUT CREEK MANOR, LLC,

     Plaintiff,

  v.

MAYHEW CENTER, LLC; and DEAN DUNIVAN,

     Defendants.

ORDER ON REMAINING
CAUSES OF ACTION

_____

MAYHEW CENTER, LLC; and DEAN DUNIVAN,

     Cross-Claimants,

  v.

WALNUT CREEK MANOR, LLC,

     Cross-Defendant.

_____/

On June 1, 2009, the jury returned a verdict in favor of Walnut Creek Manor (WCM) and against Mayhew Center (MC) on the negligence, ultrahazardous activity, trespass and nuisance claims. The jury also found that MC did not file its negligence claim within the statute of limitations. The Court must now adjudicate the remaining non-jury claims under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and the California Hazardous Substance Account Act (HSAA).

The parties are familiar with the facts of this case; thus, the Court need not restate them here.

CERCLA "generally imposes strict liability on owners and

operators of facilities at which hazardous substances were disposed." <u>3550 Stevens Creek Assocs. v. Barclays Bank</u>, 915 F.2d 1355, 1357 (9th Cir. 1990). To that end, CERCLA "authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation." <u>Id.</u>

> To prevail in a private cost recovery action, a plaintiff must establish that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).

<u>Stevens Creek</u>, 915 F.2d at 1358. Similar to CERCLA, California's HSAA provides for civil actions for indemnity and contribution and expressly incorporates CERCLA's liability standards and defenses. <u>See</u> <u>Castaic Lake Water Agency v. Whittaker Corp.</u>, 272 F. Supp. 2d 1053, 1084 C.D. Cal. 2003) ("HSAA 'create[s] a scheme that is identical to CERCLA with respect to who is liable.'" (quoting <u>City of Emeryville v. Elementis Pigments, Inc.</u>, No. 99-3719, 2001 WL 964230, at *11 (N.D. Cal.)) (alteration in original)); <u>see also</u> <u>BKHN, Inc. v. Department of Health Services</u>, 3 Cal. App. 4th 301, 305 (1992); <u>T H Agriculture & Nutrition Co., Inc. v. Aceto Chemical Co., Inc.</u>, 884 F. Supp. 357, 363 (E.D. Cal. 1995).

The issues remaining to be resolved by the Court are the source of the release of PCE and whether that release caused either party to incur response costs that were necessary and consistent

1  with the national contingency plan.

2      Although the Court is not bound by the jury determination on
3  the source issue, Fed. R. Civ. P. 39(c), the Court notes that, at
4  the conclusion of the trial, the jury answered "yes" to the
5  question, "Do you find that the source of PCE in the Walnut Creek
6  Manor property was PCE released at the Mayhew Center property?"
7  The jury also answered "no" to the question, "Do you find that the
8  source of PCE in the Mayhew Center property was released at the
9  Walnut Creek Manor property?" Notwithstanding the jury's answers
10 to these questions, the Court independently comes to the same
11 conclusions.

12     CERCLA defines a "release" as "any spilling, leaking, pumping,
13 pouring, emitting, emptying, discharging, injecting, escaping,
14 leaching, dumping, or disposing into the environment." 42 U.S.C.
15 § 9601(22). This definition encompasses both active and passive
16 conduct. <u>Carson Harbor Village, Ltd. v. Unocal Corp.</u>, 270 F.3d
17 863, 878-79 (9th Cir. 2001). Based on the entirety of the evidence
18 presented at trial, the Court concludes that the MC property was
19 the source of the PCE released onto the WCM property and that the
20 WCM property was not the source of the PCE released onto the MC
21 property. The evidence of this is overwhelming.

22     Evidence at trial showed that the PCE contamination exists at
23 far greater concentrations on the MC side of the property line.
24 Upon release, PCE gradually moves away from the source area, but
25 retains its highest concentration at the point of release, which
26 acts as a marker. Warner Trial Test. at 567:7-13, 607:20-22,
27 613:11-614:6, 615:7-619:8 and 865:24-867:10. Moreover, an
28 electronics manufacturing operation that likely utilized PCE

3

formerly leased space on the MC property; whereas WCM has been a senior-citizen residential apartment complex since it opened in 1964. K. Beard Trial Test. at 233:2-17; Williams Trial Test. at 334:11-17; Trial Exh. 107 at 2; Cuff Trial Test. at 196:18-199:15; Trial Exh. 253 at 1, 5; M. Eberle Trial Test. at 265:6-8. It is also important to note that MC performed a slant boring from the MC property onto the WCM property that created a "pathway" which allowed PCE to migrate from the MC property to the WCM property. Dunivan Trial Test. at 1126:3-1127:3; Warner Trial Test. at 569:21-573:2.

MC's theory that WCM was the source was not supported by the evidence. MC attempted to show that PCE traveled from the WCM property onto the MC property through the groundwater. However, it presented no evidence that PCE existed in groundwater beneath the WCM property; no evidence that the site-specific groundwater flow was from the WCM property and onto the MC property; and no evidence that PCE existed in the MC groundwater in amounts sufficient to lead to the MC soil readings. Schutze Trial Test. at 1293:1-7, 1295:12-18, 1302:18-22; Warner Trial Test. at 654:24-655:1, 863:12-25.

For these reasons, the Court concludes that the source of PCE in the WCM property was PCE released at the MC property.

Because no CERCLA quality cleanup plan has been created to date, the amount of CERCLA response costs cannot be determined at this juncture. However, the Court concludes that MC is 100 percent liable for any future response costs that are necessary and consistent with the national contingency plan. See 42 U.S.C. § 9613(g). Conversely, WCM is not liable for MC's response costs.

"CERCLA provides that a party that releases a hazardous substance is liable for another's response costs, but only if its release caused the other party to incur those response costs." <u>Boeing Co. v. Cascade Corp.</u>, 207 F.3d 1177, 1182 (9th Cir. 2000). Here, the Court concludes that, because MC's property is the sole contamination source, MC's CERCLA claims fail. Any costs that MC will incur will be the result of its own or its predecessors' release of PCE.[1]

The Court also denies MC's request for contribution. A CERCLA contribution claim may be brought against a "person who is liable or potentially liable under section 9607(a)." 42 U.S.C. § 113(f)(1). "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." <u>Id.</u> "Contribution is defined as the tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." <u>United States v. Atlantic Research Corp.</u>, 551 U.S. 128, 139 (2007). Here, MC's contribution claim is no different from its cost recovery action. The Court has determined that WCM is not liable for the PCE released onto its property. Therefore, MC's contribution claim fails.

CONCLUSION

For the foregoing reasons, the Court declares that the MC property is the source, and that the WCM property is not the

_____

[1] Because the Court has concluded that MC cannot recover response costs, it need not decide whether WCM is protected by the third party defense. 42 U.S.C. § 9607(b)(3).

source, of all PCE contamination on WCM and MC property. The Court also concludes that MC is 100 percent liable for any future response costs that will be necessary and consistent with the national contingency plan. The Court denies MC's claim for contribution. This order adjudicates all remaining claims pending in this case. The clerk shall enter judgment for WCM and close the file. WCM shall recover its litigation costs from MC.

    IT IS SO ORDERED.

Dated: 10/2/09

CLAUDIA WILKEN
United States District Judge