IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WALNUT CREEK MANOR, LLC,

    Plaintiff,

  v.

MAYHEW CENTER, LLC; and DEAN DUNIVAN,

    Defendants.
_____

MAYHEW CENTER, LLC; and DEAN DUNIVAN

    Cross-Claimants,

  v.

WALNUT CREEK MANOR, LLC,

    Cross-Defendant.
_____/

No. C 07-5664 CW

ORDER DENYING WALNUT CREEK MANOR'S MOTION FOR ATTORNEYS' FEES

    Plaintiff and Cross-Defendant Walnut Creek Manor, LLC (WCM) moves for an order awarding it $1,261,579.50 in attorneys' fees under California Code of Civil Procedure § 1029.8. Defendants and Cross-Claimants Mayhew Center, LLC and Dean Dunivan (collectively MC), oppose the motion. Having considered the papers filed by the parties, the Court denies WCM's motion.

BACKGROUND

    The parties are familiar with the facts of this case; thus,

the Court restates only the relevant ones here.

In December, 2004, the San Francisco Bay Regional Water Quality Control Board (Board) ordered WCM and MC, under California Water Code § 13267, to conduct soil and groundwater investigations to help determine the source of a PCE plume. The letter ordering the parties to perform these investigation stated, "The site investigation work plan must be prepared and implemented under the supervision of a State licensed civil engineer or registered geologist." Kelly, Decl., Ex. E.

On May 20, 2005, WCM submitted its report, which was prepared by a licensed professional, to the Water Board. Before submitting MC's report, Mr. Dunivan contacted Geoge Levya, a licensed geologist and the Water Board case worker assigned to the case, to inquire whether Mr. Dunivan could take soil samples without hiring an environmental consultant. Trial Test. at 921-22. Mr. Levya told Mr. Dunivan that no such consultant was needed that he could go ahead sample the soil on his own. Id.

A central issue in this lawsuit is a slant boring Mr. Dunivan performed on the MC property, drilling a hole through PCE contaminated soil on the MC property onto the WCM property. Trial Test. at 926. At the time, Mr. Levya did not indicate to Mr. Dunivan that the slant boring was performed incorrectly. However, at trial, Mr. Levya testified that he was not authorized to determine whether the slant boring hole had been properly sealed. Id. at 926. To prevent the possibility of PCE on the MC property migrating to the WCM property, the boring hole should have been

sealed with neat cement.[1]  Instead, Mr. Dunivan filled the hole with the remaining soil he had removed to obtain the sample. Id. at 926-27.

Mr. Levya's trial testimony clarified the conditions under which a licensed professional must conduct soil sampling.  He stated that soil samples taken less than five feet deep do not require a drilling permit by Contra Costa County nor must they be taken by a licensed geologist.  Id. at 927-28.  However, Mr. Dunivan took samples below five feet, going to at least six and one-half feet below the ground surface.  Trial Exh. 148 at 2.  Mr. Levya testified that he was unaware that Mr. Dunivan took samples this deep and that such drilling without a license was illegal. Id. at 928.

Mr. Dunivan incorporated the soil samples from the slant boring into his soil investigation report, which he submitted to the Board on July 26, 2005.  On September 27, 2005, the Board rejected Mr. Dunivan's report and noted, "An appropriate site investigation would have included a methodical investigation of soil and groundwater to provide useful information (conceptual site model) to aid in identifying the source and extent of PCE found at the Site.  Based on other reports from the area, groundwater zones of interest extend to about 70 feet below ground surface.  Because the report you submitted included only soil data, with a maximum sample depth of 6.5 feet below ground surface collected from a narrow area along the property line, and does not include groundwater data, it is of little use in determining the extent and

---

[1] Neat cement is a particular type of cement and water mixture.

1 source of PCE found at the Site." Kelly Decl., Exh. J. at 1
2 (emphasis in original). The Board also stated that Mr. Dunivan's
3 report, "which ma[de] conclusions regarding soil or groundwater
4 conditions, require[d] the professional stamp of a licensed
5 engineer or geologist." Id. at 2. Mr. Dunivan prepared the report
6 himself, and he maintains neither of those qualifications.

7 Mr. Dunivan wrote back to the Board and asserted that his
8 report was valid and satisfied the Board's requirements. The Board
9 responded that Mr. Dunivan's report "does not meet the common
10 standards of practice . . . for soil and groundwater
11 characterization. Such information should include a description of
12 boring locations and procedures, sampling procedures, a summary of
13 analytical results, and a comparison of analytical data to
14 appropriate standards. These are basic requirements for reporting
15 that any qualified licensed environmental professional is obligated
16 to follow." Kelly Decl., Exh. L at 2. As of the trial date, Mr.
17 Dunivan had not conducted licensed soil and groundwater
18 investigations that the Board required. Trial Test. at 1109.

19 At the trial, Mr. Dunivan expressed his regret for not hiring
20 a licensed professional to perform the slant bore drilling. Trial
21 Test. at 1065. He admitted that he had no scientific background in
22 the migration of contaminants. Id. at 1086. Mr. Dunivan realized
23 that he "made a huge mistake in doing it myself. It caused nothing
24 but misery and headaches. It was easier and cheaper in the long
25 run to go with the professional people." Id. at 1078.

26 On June 1, 2009, the jury returned a verdict in favor of WCM
27 and against MC on the negligence, ultrahazardous activity, trespass
28 and nuisance claims. As to the negligence claim, the jury

4

concluded that MC failed to act quickly enough to abate PCE contamination after it was discovered, and that MC's negligence was a substantial factor in causing harm to WCM. The jury awarded WCM $350,000 in past damages and $1,597,000 in future damages. As to the remaining claims, the jury found in favor of WCM and concluded that the slant boring was a substantial factor in causing damage to WCM. The jury found that WCM did not suffer monetary damages resulting from MC's slant boring additional to those awarded as part of the negligence claim.

DISCUSSION

Federal courts exercising subject matter jurisdiction over state law claims follow state law concerning attorneys' fees unless the state law contradicts a valid federal statute. Avery v. First Resolution Mgmt. Corp., 568 F.3d 1018, 1023 (9th Cir. 2009). Because neither party asserts that federal law conflicts with state law, the Court will follow California's attorneys' fees law.

WCM brings this motion for attorneys' fees solely under California Code of Civil Procedure section 1029.8. That section provides:

> Any unlicensed person who causes injury or damage to another person as a result of providing goods or performing services for which a license is required . . . shall be liable to the injured person for treble the amount of damages assessed in a civil action in any court having proper jurisdiction. The court may, in its discretion, award all costs and attorney's fees to the injured person if that person prevails in the action.

Cal. Code Civ. Proc. § 1029.8.

MC asserts that, because section 1029.8 contains a provision for treble damages, the entire statute, including the attorneys' fees provision, is punitive in nature. MC argues that punitive

5

damages can only be awarded if alleged in the complaint and proved at trial. Therefore, MC argues, because WCM did not make such an allegation in its complaint nor did the jury make such a finding, WCM may not receive attorneys' fees under this statute.

MC is correct that WCM's complaint does not refer to section 1029.8 or WCM's intent to seek recovery on the basis that Mr. Dunivan lacked a license to perform slant borings. However, failure to include these allegations in the complaint is not fatal to WCM's claim for attorneys' fees.

An award of attorneys' fees in this case is a discretionary decision for the Court to make, not a penalty imposed on MC. The cases on which MC relies to argue that section 1029.8 is penal are inapposite because they all involve awards of treble damages or other mandatory penalties, not discretionary attorneys' fees. See e.g., G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256, 264 (1983) (treble damages under Unfair Practices Act); Santa Barbara County v. More, 175 Cal. 6, 8 (1917) (monetary penalty imposed by County); Chipoman v. Emeric, 5 Cal. 239, 240 (1855) (treble damages statute); Thompson v. San Francisco Gas & Electric Co., 20 Cal. App. 142, 144 (1912) (statutory penalty); Miller v. Municipal Court of City of Los Angeles, 22 Cal. 2d 818 (1943) (treble damages under Emergency Price Control Act of 1942); Germia Pools Inc. v. Sherwood, 2002 WL 1753191, at *3 (treble damages under California Code of Civil Procedure § 1029.8). Here, WCM does not seek treble damages. Instead it seeks a discretionary award of attorneys' fees that bears no resemblance to the penal aspects of a treble damages award.

Under California law, attorneys' fees are awarded to a

6

prevailing party as costs, not damages.  Under federal procedural law, costs are appropriately moved for under Federal Rule of Civil Procedure 54(d).  "When any statute of this state refers to the award of 'costs and attorney's fees,' attorney's fees are an item and component of the costs to be awarded and are allowable as costs . . . ."  Cal. Code Civ. Proc. § 1033.5(c)(5).  See Berkla v. Corel Corp., 302 F.3d 909, 919 (9th Cir. 2002) ("California also allows attorney's fees authorized by contract, statute, or law to be recovered as costs"); see also Ferrelgas, Inc. v. American premier Underwriters, Inc., 79 F. Supp. 2d 1160, 1163 (C.D. Cal. 1999); Chin v. KMR Property Mgmt., 166 Cal. App. 4th 175, 194 (2008).

WCM claims that two types of damages were caused by Mr. Dunivan's slant boring: (1) physical damage caused by the boring and failure properly to fill the bored holes with neat cement and (2) expenditure of funds related to the investigation of PCE contamination on the properties.

Although the Court may award attorneys' fees under section 1029.8, it exercises its discretion not to do so for several reasons.  First, the Board sent Mr. Dunivan inconsistent messages regarding whether he needed to hire licensed professionals in order to comply with the order under California Water Code § 13267 requiring soil and groundwater investigations.  Some of the letters sent by the Board to Mr. Dunivan noted that such an investigation required the supervision of licensed professionals, but on other occasions, the Board was less clear about this requirement.

For instance, on July 29, 2005, the Board sent Mr. Dunivan a "Fact Sheet" entitled, "Requirements for Submitting Technical

Reports Under Section 13267 of the California Water Code." The Fact Sheet included the following question and answer:

> Do I have to use a consultant or attorney to comply?
>
> There is no legal requirement for this, but as a practical matter, in most cases the specialized nature of the information required makes use of a consultant and/or attorney advisable.

Judd Decl., Exh. 1 at 4. Mr. Dunivan also contacted Mr. Levya at the Board to confirm that he could take soil samples without hiring an environmental consultant. Further, Mr. Levya was present when Mr. Dunivan made the slant boring onto the WCM property and he did not object to the manner in which Mr. Dunivan conducted the drilling.

After Mr. Dunivan took the slant boring samples, he met with Mr. Levya and Mr. Levya's supervisor, Chuck Headlee, also a licensed geoligist. Mr. Levya and Mr. Headlee informally told Mr. Dunivan that the soil investigation data prepared in response to WCM's report would likely satisfy the July 29, 2005 investigation requirement. Trial Test. at 922. Although the Board ultimately refused to accept Mr. Dunivan's report, it never stated that his slant boring sampling technique was illegal. Judd Decl., Exh. 7; Exh. 13 at 2. His report was refused because it contained insufficient data. Id.

Second, the jury made only general findings with respect to the slant boring. It concluded that the slant boring was a substantial factor in causing damage to WCM; however, it was not asked to specify what aspect of the slant boring caused the damage. For instance, the jury was not asked to determine whether Mr. Dunivan's lack of a geologist license caused (1) the harm to the

WCM property or (2) the Board to require WCM to conduct further investigations.  Moreover, the jury was not asked specifically to calculate the amount of damage caused by either of these two harms.  Thus, it is not clear to what extent the damages awarded to WCM by the jury were attributable to Mr. Dunivan's lack of a professional license.  For these reasons, the Court exercises its discretion to deny WCM attorneys' fees under section 1029.8.

CONCLUSION

For the foregoing reasons, the Court denies WCM's motion for attorneys' fees (Docket No. 179).

IT IS SO ORDERED.

Dated: 02/22/2010

CLAUDIA WILKEN
United States District Judge