Brian A. Kelly (SBN 124738)
Christian P. Foote (SBN 240919)
DUANE MORRIS LLP
One Market, Spear Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:      bakelly@duanemorris.com
             cpfoote@duanemorris.com

Attorneys for Plaintiff and Cross-Defendant
WALNUT CREEK MANOR, LLC

Aaron Myers (SBN 200145)
HOWREY LLP
525 Market St. Suite 2600
San Francisco, CA 94105
Phone: (415) 848-4900
Facsimile: (415) 848-4999
myersa@howrey.com

Attorneys for Defendants and Cross-Complainants
MAYHEW CENTER, LLC and DEAN DUNIVAN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WALNUT CREEK MANOR, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>MAYHEW CENTER, LLC, a California limited liability company; Dean Dunivan, an individual; Etch-Tek, Inc., a former California corporation; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 4:07-CV-5664 CW<br><br>**STIPULATION AND [PROPOSED] INJUNCTION ORDER AGAINST MAYHEW CENTER LLC AND DEAN DUNIVAN WITH RESPECT TO CLEANUP AND ABATEMENT OF MC/WCM PROPERTIES** |

DM1\2316662.1

1

STIPULATION AND [PROPOSED] INJUNCTION ORDER AGAINST MAYHEW CENTER, LLC AND DEAN DUNIVAN WITH RESPECT TO CLEANUP AND ABATEMENT OF MC/WCM PROPERTIES

1

2
MAYHEW CENTER, LLC, a California limited
liability company; and DEAN DUNIVAN, an
3
individual,

4
                    Cross-Claimants,              Judge:      Hon. Claudia Wilken

5
        v.                                        First Amended
                                                  Complaint Filed:   May 19, 2008
WALNUT CREEK MANOR, LLC,
6
                    Cross-Defendant.
7

8

9                              **STIPULATION**

10      WHEREAS, Walnut Creek Manor, LLC ("WCM") owns and operates a seniors-only

11  residential apartment complex at 81 Mayhew Way, Walnut Creek, California;

12      WHEREAS, Mayhew Center, LLC ("MC") owns and/or leases real property immediately

13  adjacent to the east of the WCM property, with addresses of 3301-3309, 3313-3329, and 3333-3341

14  Vincent Road, Pleasant Hill, California;

15      WHEREAS, Dean Dunivan ("DUNIVAN") is the part owner and sole manager and operator

16  of Mayhew Center LLC;

17      WHEREAS, following trial of this action, the jury and the Court independently determined

18  that the source of the PCE at and beneath the WCM property was PCE released at the MC property;

19      WHEREAS, the jury verdict was against MC and DUNIVAN and in favor of WCM, and the

20  jury awarded $350,000 in past damages, and $1,597,000 in future damages to WCM;

21      WHEREAS, as to the causes of action concurrently tried to the Court, as set forth more fully

22  in its "Order On Remaining Causes of Action" dated October 2, 2009, the Court declared that the

23  MC property to be the source, and that the WCM property is not the source, of all PCE

24  contamination on WCM and MC property, that MC is 100 percent liable for any future response

25  costs that will be necessary and consistent with the National Contingency Plan and denied MC's

26  claim for contribution;

27      WHEREAS, based upon the jury's verdict and the October 2, 2009 Order on Remaining

28  Causes of Action, Judgment was entered in WCM's favor on October 2, 2009;

DM1\2316662.1                              2
STIPULATION AND [PROPOSED] INJUNCTION ORDER AGAINST MAYHEW CENTER, LLC AND DEAN
DUNIVAN WITH RESPECT TO CLEANUP AND ABATEMENT OF MC/WCM PROPERTIES

WHEREAS, following entry of the judgment on the jury's verdict and the Court's order on the remaining causes of action, MC filed three post-trial motions: (1) Motion to Stay Judgment Without Posting Bond (Docket No. 193); (2) Motion for New Trial and/or to Alter or Amend Judgment under FRCP 59(e) (Docket No. 183); and (3) Motion to Alter or Amend the Court's Order on Remaining Causes of Action (Docket No. 185);

WHEREAS, in response to these motions, the Court denied the Motion to Amend or Alter Order on Remaining Causes of Action (Docket No. 185) and Motion to Stay Execution of Judgment Without Bond (Docket No. 193);

WHEREAS, as to MC's Motion for A New Trial or to Amend Judgment (Docket No. 183), the Court Order rejected all but one of MC's arguments, and as to that argument, the Court raised concerns and requested further briefing on the jury's award of $1.597 million in "future damages."

WHEREAS, the Court has yet to rule on MC's and DUNIVAN's motion for new trial;

WHEREAS, on or about February 5, 2010, MC and DUNIVAN filed a separate lawsuit entitled *Mayhew Center, LLC, and Dean Dunivan v. Norma Beard*, Case No. 4:10-CV-00527-CW in this Court, against Norma Beard, as an alleged prior owner of the MC property, seeking, among other things, recovery for the damages awarded by the jury to WCM (hereafter "Beard Action"). The Beard Action was consolidated with this action on February 23, 2010.

WHEREAS, on July 14, 2010, the Parties to this action and the Beard Action attended a settlement conference with the Honorable Magistrate Judge Joseph C. Spero and reached a final settlement to the disputes in both actions, which among other things will compensate WCM for its past damages and cost award, establish an escrow fund to perform certain PCE remediation and confirm in a Court Order that MC and DUNIVAN are responsible for and will perform necessary clean up of the PCE contamination existing at the MC and WCM properties, and establish a process that if followed will result in the entry of a Satisfaction of the Judgment that was entered on October 2, 2009;

WHEREAS, to effectuate this agreement and to assure that the PCE contamination is promptly remediated, the Parties in this action stipulate and consent to the Court's issuance of the [Proposed] Order of Injunction Against Mayhew Center, LLC and Dean Dunivan in the form

1    attached hereto.

2          THEREFORE, the Parties stipulate to the entry of the attached [Proposed] Order of

3    Injunction Against Mayhew Center, LLC and Dean Dunivan.

4          **IT IS SO STIPULATED**

5

6    Dated: October 27, 2010                          **DUANE MORRIS LLP**

7

8                                                     _____
                                                     Brian A. Kelly
9                                                     Attorneys for Plaintiff and Cross-Defendant
                                                     WALNUT CREEK MANOR, LLC
10

11   Dated: October 27, 2010                         **HOWREY LLP**

12

13                                                    _____
                                                     Aaron Myers
14                                                   Attorneys for Defendant and Cross-Complainant
                                                     MAYHEW CENTER LLC and DEAN
15                                                   DUNIVAN

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALNUT CREEK MANOR, LLC, | Case No. 4:07-CV-5664 CW |
| Plaintiff, | |
| v. | [~~PROPOSED~~] INJUNCTION ORDER AGAINST MAYHEW CENTER, LLC AND DEAN DUNIVAN WITH RESPECT TO CLEANUP AND ABATEMENT OF MC/WCM PROPERTIES |
| MAYHEW CENTER, LLC, a California limited liability company; Dean Dunivan, an individual; Etch-Tek, Inc., a former California corporation; and DOES 1-50, inclusive, | |
| Defendants. | |
| MAYHEW CENTER, LLC, a California limited liability company; and DEAN DUNIVAN, an individual, | |
| Cross-Claimants, | Judge:      Hon. Claudia Wilken |
| v. | First Amended Complaint Filed:      May 19, 2008 |
| WALNUT CREEK MANOR, LLC, | |
| Cross-Defendant. | |

DM1\2316662.1

STIPULATION AND [~~PROPOSED~~] INJUNCTION ORDER AGAINST MAYHEW CENTER, LLC AND DEAN DUNIVAN WITH RESPECT TO CLEANUP AND ABATEMENT OF MC/WCM PROPERTIES

Pursuant to the October 2, 2009 Judgment, the Parties' Stipulation, and the Court's inherent equitable authority to order injunctive relief to abate the nuisance found by the jury, and good cause appearing therefor, the Court hereby amends the October 2, 2009 Judgment solely with respect to the jury's award and Judgment of Future Damages in the amount of $1,597,000, and in place of the Future Damages award enters the following INJUNCTION ORDER jointly and severally against Defendants and Cross-Complainants Mayhew Center, LLC (hereafter "MC") and Dean Dunivan (hereafter "DUNIVAN"), and in favor of Plaintiff and Cross-Defendant, Walnut Creek Manor, LLC (hereafter "WCM") as follows:

**A.    JUDGMENT AND SATISFACTION OF SAME**

1.    Within 45 days of this Order, WCM shall be paid Four Hundred Thousand Dollars ($400,000) in satisfaction of the Jury's award of past damages and the Court's award of costs, as set forth in the October 2, 2009 Judgment.  Pursuant to a separate written Settlement Agreement, the source of this payment will be made by Truck Insurance Exchange on behalf of its insured, a former owner of the Mayhew Center property, Norma Beard.

2.    With respect to the Jury's Verdict and the October 2, 2009 Judgment awarding future damages in the amount of $1,597,000, this portion of the Judgment hereby is amended and replaced, at WCM's election as the prevailing party, by an Injunction requiring that MC and DUNIVAN abate the nuisance pursuant to the Jury's Verdict on the continuing nuisance cause of action, and as set forth more fully herein:

a.    No later than 45 days from the date of this Order, One Million One Hundred and Fifty Thousand Dollars ($1,150,000) will be deposited into an escrow account and administered pursuant to the terms and conditions of an Escrow Agreement, attached hereto as Exhibit "A" (hereafter "ESCROW FUNDS").  Pursuant to a separate written Settlement Agreement, the source of the ESCROW FUNDS shall be as follows:  Three Hundred Thousand Dollars ($300,000) will be paid by Truck Insurance Exchange on behalf of its insured, One Hundred and Fifty Thousand Dollars ($150,000) will be paid by Norma Beard, a former owner of the Mayhew Center property, Norma Beard, and the remaining Seven Hundred Thousand Dollars ($700,000) will

1   be paid by MC and DUNIVAN.  The ESCROW FUNDS shall be used and disbursed pursuant to the

2   terms of the Escrow Agreement attached hereto as Exhibit "A."

3          b.      As found by the jury and the Court, and reflected in the Judgment the

4   MC property is the source of the PCE contamination present at and beneath the WCM Property.

5   Accordingly, MC and DUNIVAN shall be jointly and severally obligated to perform and to pay all

6   costs necessary to remediate, cleanup and abate the PCE contamination present in soil vapor, soil

7   and groundwater at or beneath the WCM REMEDIATION AREA to the most stringent

8   RESIDENTIAL STANDARDS currently existing or as may later be set by the Regional Water

9   Quality Control Board, San Francisco Bay Region, as defined and set forth more fully below.

10         c.      MC and DUNIVAN are ordered to remediate all PCE contamination

11  present in soil vapor, soil and groundwater at or beneath the WCM REMEDIATION AREA to levels

12  at or below the RESIDENTIAL STANDARDS and to reach such levels on or before two (2) years

13  from the date of this INJUNCTION ORDER, or any later date that may be established pursuant to

14  the terms of Sections C. and D., below.

15         d.      MC and DUNIVAN are further ordered to take all such measures

16  necessary to assure that the RESIDENTIAL STANDARDS are maintained for an additional period

17  of ten years from the date of entry of Satisfaction of Judgment.

18         e.      MC's and DUNIVAN's obligations pursuant to this INJUNCTION

19  ORDER are not limited to the amount of ESCROW FUNDS and each will remain jointly and

20  severally obligated to perform and to pay for any and all costs necessary to remediate, cleanup and

21  abate any PCE contamination present in soil vapor, soil and groundwater at or beneath the WCM

22  REMEDIATION AREA to levels at or below the RESIDENTIAL STANDARDS.

23         f.      MC, but not DUNIVAN, shall be obligated to defend and indemnify

24  WCM from and against any and all lawsuits, claims or demands brought or asserted against WCM

25  relating in any way to the PCE contamination potentially existing at or emanating from the WCM

26  REMEDIATION AREA or the MC property.  The terms and conditions of MC's obligation to

27  defend and indemnify are set forth more fully in a separate written Settlement Agreement.

28

1    3.    Once it has been determined, either by the stipulation of the parties and/or an

2    Order of the Court following a specific factual finding, that Sections C.1. through C.4. of this

3    INJUNCTION ORDER have been satisfied the Clerk shall enter a Satisfaction of Judgment.

4    **B.    DEFINITIONS**

5    The following capitalized terms, when used anywhere in this INJUNCTION ORDER

6    are intended to have the specific meanings provided below:

7    1.    "CLEANUP AND ABATEMENT [and/or ABATE]" means the remediation

8    and removal of PCE from soil vapor, soil and groundwater at or below the WCM REMEDIATION

9    AREA to levels at or less than the RESIDENTIAL STANDARDS for PCE,

10    2.    "DUNIVAN" means Defendant and Cross-Complainant Dean Dunivan, an

11    individual.

12    3.    "INJUNCTION ORDER" means this [proposed] Order once signed by the

13    Court.

14    4.    "MC" means Defendant and Cross-Complainant "Mayhew Center, LLC."

15    5.    "PCE" means the chemical known as tetrachloroethylene and its degradation

16    products, including trichloroethylene, cis-1,2-Dichlorethylene, trans-1,2-Dichlorethylene, and vinyl

17    chloride.

18    6.    "RESIDENTIAL STANDARDS" means the most stringent of any standards

19    or screening levels articulated for residential properties by the Regional Water Quality Control

20    Board, San Francisco Bay Region relating to PCE in soil vapor, soil and groundwater.  The

21    RESIDENTIAL STANDARDS applicable as of the date of this INJUNCTION ORDER are set forth

22    on Exhibit "B". The RESIDENTIAL STANDARDS are meant to and shall include any changes to

23    the standards or screening levels for residential property as may be set in the future.  The intent of

24    this INJUNCTION ORDER is that any PCE existing at and beneath the WCM REMEDIATION

25    AREA will be remediated and removed from the soil vapor, soil and groundwater to levels that are at

26    or below the most stringent articulated standard or screening level for residential property.

27    7.    "WCM" means Plaintiff and Cross-Defendant "Walnut Creek Manor, LLC."

28

8.     "WCM REMEDIATION AREA" shall mean the area referred to and depicted with this label on Exhibit "C", which specifically includes all area within the red box including the Maintenance Building, apartment building numbers 20, 21, 22, 23, 26, 27, 28, 29 and Laundry Rooms 6 and 7, and any soil vapor, soil and groundwater at or beneath the WCM REMEDIATION AREA.

**C.     PCE REMEDIATION**

1.     MC and DUNIVAN are hereby ordered to CLEANUP AND ABATE all PCE in soil vapor, soil and groundwater at and beneath the WCM REMEDIATION AREA to concentration levels at or below the RESIDENTIAL STANDARDS for PCE.

2.     Six (6) months and twelve (12) months after meeting the conditions set forth in Section C.1., above, MC and DUNIVAN must perform follow-up sampling and testing of soil vapor, soil and groundwater at reasonably appropriate locations to confirm that any PCE present in soil vapor, soil and groundwater at and beneath the WCM REMEDIATION AREA remains at concentration levels at or below RESIDENTIAL STANDARDS.

3.     After the conditions set forth in Sections C.1. and C.2. have been met, MC and DUNIVAN must obtain the written certification of the Regional Water Quality Control Board, San Francisco Bay Region confirming that an approved CLEANUP AND ABATEMENT work plan has been satisfactorily implemented and completed and that the PCE concentration levels in soil vapor, soil and groundwater at and beneath the WCM REMEDIATION AREA are at or below RESIDENTIAL STANDARDS as required pursuant to Sections C.1. and C.2., above.

4.     MC and DUNIVAN are further ordered to meet the conditions set forth in Sections C.1. through C.3. within two (2) years of the date of the INJUNCTION ORDER, or as may be extended pursuant to Section F., below.

5.     In performing their obligation pursuant to this INJUNCTION ORDER, MC and DUNIVAN must meet or exceed all reasonable standards of care relating to such work, which shall include, but is not limited to, the following:

a.     Retain appropriate licensed professionals to perform the work necessary and required by this INJUNCTION ORDER.  The retained licensed professionals must be

competent and proficient in the fields pertinent to the required activities, and must be licensed and in good standing with all relevant federal, state, and local regulatory bodies.  All professionals conducting work pursuant to this INJUNCTION ORDER must have obtained any necessary regulatory approvals, permits, and/or other applicable agreements in advance of commencing any investigation or remediation work necessary to comply with this INJUNCTION ORDER.

        b.     Obtain all necessary permits and/or other approvals from any involved federal, state, or local regulatory authorities, including, but not limited to, the Regional Water Quality Control Board, San Francisco Bay Region.

        c.     Properly manage, store, treat, and dispose of any contaminated materials, including soil and groundwater, in accordance with applicable federal, state, and local laws and regulations.

        d.     Comply with the terms and conditions of the Access Agreement, attached hereto as Exhibit "D".

        e.     Provide at least two (2) days advance notice to WCM of any proposed sampling activity at or beneath the WCM REMEDIATION AREA and allow WCM to observe and obtain a split sample, at WCM's expense.

        f.     Provide copies to WCM of all final reports, work plans, laboratory results and any other documents relating to PCE at or near the WCM REMEDIATION AREA, at no cost to WCM.

      6.     MC and DUNIVAN shall have no obligation under this INJUNCTION ORDER regarding PCE that:

        a.     Is present in soil vapor, soil and groundwater at or beneath the WCM property other than within or emanating from the WCM REMEDIATION AREA; or,

        b.     The Parties stipulate or the Court makes a factual finding that the PCE was spilled or released at the WCM REMEDIATION AREA after the date of this INJUNCTION ORDER through no fault of MC, DUNIVAN or their agents.

**D.    SATISFACTION OF JUDGMENT**

      1.     The Clerk will enter the Satisfaction of Judgment only upon the stipulation of

the parties or upon the finding of the Court, following a noticed motion and hearing that MC and DUNIVAN have met the conditions set forth in Sections C.1. through C.4.

2.    If the Parties are unable to stipulate as set forth above, MC and DUNIVAN may bring a properly noticed motion pursuant to Section G seeking an order regarding compliance with the conditions set forth in Sections C.1. through C.4.  WCM will be allowed to file an opposition and supporting evidence.  Following briefing and a hearing, the Court will make a factual finding based upon a preponderance of evidence whether or not the conditions set forth in Sections C.1. through C.4. have been met.

a.    In the event the Court makes a factual finding that the conditions of Section C.1. through C.4. are met, the Clerk shall enter the Satisfaction of Judgment.

b.    In the event that the Court makes a factual finding that the conditions of Section C.1. through C.4. are not met, MC and DUNIVAN shall continue to perform and pay for all available and reasonable remediation measures necessary to achieve RESIDENTIAL STANDARDS as soon as reasonably possible, and the Satisfaction of Judgment will not be entered unless and until the conditions of Sections C.1. through C.4. have been met.

**E.    MONITORING FOR PCE**

1.    During the first five (5) years following the entry of Satisfaction of Judgment, MC and DUNIVAN shall be jointly and severally obligated to perform at their expense, an appropriate and reasonable level of testing of soil vapor, soil and groundwater at and beneath the WCM REMEDIATION AREA at least once per year to determine that PCE is not detected at levels that exceed RESIDENTIAL STANDARDS.

2.    During years six (6) through ten (10) from the entry of Satisfaction of Judgment, neither MC nor DUNIVAN shall have any obligation under this INJUNCTION ORDER to perform or pay for routine monitoring activity pursuant to this INJUNCTION ORDER.

**F.    EXTENSION FOR GOOD CAUSE**

1.    The two-year time limit to achieve RESIDENTIAL STANDARDS for PCE in soil vapor, soil and groundwater, as set forth in Sections A. and C., above, can be extended for good cause, either by the written stipulation of the parties filed with the Court or upon a finding of good

cause by the Court that MC and DUNIVAN have diligently pursued reasonable and appropriate measures to comply with the terms of this INJUNCTION ORDER in an effort to achieve RESIDENTIAL STANDARDS, but through no fault of MC, DUNIVAN or their consultants, additional time will be needed to CLEANUP AND ABATE the WCM REMEDIATION AREA.

2. If the conditions set forth in Section C.1. are met within two (2) years, but the sampling and testing conditions set forth in Section C.2. are not met until after the expiration of the two-year time limit, the time limit set forth in Section C.4. will be deemed extended to include the period of time necessary to meet the conditions set forth in C.2.

3. If the conditions set forth in Section C.1. are met within two (2) years, but the sampling and testing required by Section C.2. produces one or more test result with PCE concentration levels at or above RESIDENTIAL STANDARDS, good cause will exist pursuant to this Section to extend the two year time limit.

4. Any extension for good cause pursuant to this Section shall be limited to the amount of time reasonably necessary to meet the conditions set forth in Sections C.1. through C.3., above.

5. If at the expiration of the extended period of time the conditions set forth in Sections C.1 through C.3. still have not been met, a further extension of time can be ordered upon a further showing of good cause as set forth in Section F.1., above.

**G.    DISPUTE RESOLUTION**

1. In the event the Parties are unable to settle or informally resolve any dispute relating to the interpretation, application or enforcement of this INJUNCTION ORDER, including whether the conditions set forth in Section C.1 through C.4 have been met, either party may file a duly-noticed motion before this Court to interpret, apply or enforce the terms of the INJUNCTION ORDER or to make specific findings of fact.

2. Following an opposition and hearing, and the Court's ruling on the motion, the prevailing party will be entitled to its reasonable attorney's fees and costs incurred in defending or bringing any motion before this Court to resolve such disputes.

3.      For the purpose of this Section, the Court shall name which party is the "prevailing party" upon issuing any order to resolve disputes between the Parties as stated above.

4.      Within ten days of the Court's order, the prevailing party shall submit reasonable documentation to support its attorney's fees and costs incurred, and the Court shall enter an order awarding such reasonable attorneys' fees and costs in favor of the prevailing party.

**H.      ESCROW FUNDS**

1.      If the conditions of Sections A.1 and C.1. through C.4. are met, upon the entry of Satisfaction of Judgment, any remaining ESCROW FUNDS shall be paid to MC and DUNIVAN.

2.      If the conditions of Sections A.1. and C.1. through C.4. are not met, any remaining ESCROW FUNDS shall be paid to WCM.

**I.      COURT TO RETAIN JURISDICTION**

1.      This Court shall retain jurisdiction to enforce this INJUNCTION ORDER.

**IT IS SO ORDERED.**

**November 23, 2010**

DATED:  ~~October ____, 2010~~.

HON. CLAUDIA WILKEN
JUDGE OF THE DISTRICT COURT

# EXHIBIT A

## ESCROW AGREEMENT

**AGREEMENT** made this 27th day of October, 2010 between, by and among: Walnut Creek Manor LLC ("WCM"); Mayhew Center LLC and Dean Dunivan (collectively "MC"); and, Rossi Doskocil & Finkelstein LLP, of Long Beach, California, the appointed agent to administer the funds in accordance with the terms of this Escrow Agreement and the terms on the Injunction in the WCM Action ("Escrow Agent").

### WITNESSETH

**WHEREAS**, the Parties to the WCM Action and this Agreement, MC and WCM (hereafter "Parties"), have entered into a Settlement Agreement regarding the October 2, 2009 Judgment entered in the United States District Court for the Northern District of California in an action entitled *Walnut Creek Manor, LLC v. Mayhew Center, LLC, et al,* Case No. C-07-5664 (hereafter "WCM Action"), which requires, among other things, that certain remediation work will be performed by MC as set forth in an Injunction Order attached to a Stipulation of the parties dated October 27, 2010, and to be entered in the WCM Action;

**WHEREAS**, the Parties have stipulated and the Court has entered an Injunction Order (the "Injunction Order") providing, among other things, for the continuing jurisdiction of the Court in the WCM Action to ensure the cleanup and abatement of the WCM property by MC;

**WHEREAS**, pursuant to a separate Settlement Agreement and the Injunction Order, One Million One Hundred and Fifty Thousand Dollars ($1,150,000) will be deposited into an escrow account on or before December 13, 2010 and to be administered pursuant to the terms and conditions of an Escrow Agreement;

**WHEREAS**, the Injunction Order requires the escrow funds to be used and disbursed solely for the remediation, cleanup and abatement, and any investigation necessary thereto, of PCE contamination in soil vapor, soil and groundwater at or beneath a specific area at the MC property identified as Source Area 1 and an area identified in the Injunction Order as the WCM Remediation Area;

**NOW, THEREFORE** in consideration of the foregoing and the mutual covenants set forth herein, the Parties and the Escrow Agent agree as follows:

I.   **DEFINITIONS**

    A.   "CLEANUP AND ABATEMENT [and/or ABATE]" means the removal of PCE from the subsurface soil, soil vapor, and groundwater at and beneath MC SOURCE AREA 1 and the WCM REMEDIATION AREA, as set forth more fully in the Injunction Order.

    B.   "DUNIVAN" means Defendant and Cross-Complainant Dean Dunivan, an individual.

DM1\2322969.4

C.   "INJUNCTION ORDER" means the [proposed] Injunction Order Against Mayhew Center LLC And Dean Dunivan with Respect to Cleanup and Abatement of MC/WCM Properties entered by the Court in the WCM Action.

D.   "MC" means Defendant and Cross-Complainant "Mayhew Center, LLC."

E.   "MC SOURCE AREA 1" is that area of the Mayhew Center property along the boundary with the WCM property as depicted in the illustration attached as Exhibit "C" to the INJUNCTION ORDER and includes any PCE contamination to the soil vapor, soil and groundwater at, beneath and in the general area along the property boundary of what is depicted as Source Area 1.

F.   "PCE" means tetrachloroethylene and its degradation products, including trichloroethylene, cis-1,2-Dichlorethylene, trans-1,2-Dichlorethylene, and vinyl chloride.

G.   "RESIDENTIAL STANDARDS" means the most stringent of any standards or screening levels articulated for residential properties by the Regional Water Quality Control Board, San Francisco Bay Region relating to PCE in soil vapor, soil and groundwater. The current RESIDENTIAL STANDARDS are set forth on Exhibit "B" to the INJUNCTION ORDER. The RESIDENTIAL STANDARDS are meant to and shall include any changes to the standards or screening levels for residential property as may be set in the future.

H.   "WCM" means Plaintiff and Cross-Defendant "Walnut Creek Manor LLC."

I.   "WCM ACTION" means the action entitled Walnut Creek Manor LLC v. Dean Dunivan and Mayhew Center LLC, U.S. District Court, Northern District of California, Case No. C 07-5664, and related cross actions.

J.   "WCM REMEDIATION AREA" shall mean the area referred to and depicted with this label on Exhibit "C" to the INJUNCTION ORDER, and specifically includes any soil vapor, soil and groundwater at or beneath the WCM REMEDIATION AREA.

## II.   ESTABLISHMENT AND DISBURSEMENT OF ESCROW FUNDS FOR REMEDIATION WORK

A.   Within 45 days of execution of the Settlement Agreement, MC shall deposit $700,000, Truck Insurance Exchange shall deposit $300,000 and Norma Beard shall deposit $150,000 by bank check or wire instructions provided (the Escrow Funds) with Escrow Agent to be held in escrow in accordance with the terms and conditions herein set forth. The Escrow Funds shall be deposited by Escrow Agent in an interest-bearing escrow account with Preferred Bank, 21615 Hawthorne Blvd, Ste 100, Torrance, California 90503. ("Escrow Account"). Any interest earned on the Escrow Funds shall be returned to the Escrow Account and shall be used for the purposes of remediation.

DM1\2318792.1
DM1\2322969.4

B.    The Escrow Account will be established for a duration of two (2) years from the date of the Injunction Order issued by the Court in the WCM Action, or as may be extended by stipulation of the Parties and/or Court Order.  The Escrow Agent shall release funds from such Escrow Account only upon the following circumstances and to the extent indicated herein to satisfy the Injunction Order.

C.    Disbursements shall be made only to pay the reasonable fees and expenses of the Escrow Agent and for remediation work that is reasonably necessary to accomplish CLEANUP AND ABATEMENT pursuant to the Injunction Order. Remediation work shall be deemed reasonably necessary to accomplish CLEANUP AND ABATEMENT only if such work:

1.    Is reasonably necessary to bring PCE levels at the WCM REMEDIATION AREA to RESIDENTIAL STANDARDS, or

2.    Is reasonably necessary to remediate or reduce PCE levels within the  MC SOURCE AREA 1.

D.    The Escrow Agent shall have no duty or discretion to determine what work is reasonably necessary to accomplish CLEANUP AND ABATEMENT.  Rather, the procedure by which disbursements shall be made from the Escrow Account is as follows:

1.    Except as provided below in Section II.E., the Escrow Agent shall disburse funds only upon presentation by MC and Dunivan of a valid Disbursement Request, and only in the amount stated thereon.  A Disbursement Request must contain and shall be valid only if it contains the following information:

a.    A detailed description of the work performed or to be performed for which MC and Dunivan seek a disbursement, along with copies of the vendor invoices to be paid.  The invoices must describe with reasonable particularity the investigation or remediation work that was/is to be performed with sufficient detail to determine that the work meets the conditions set forth in Section II.C., above;

b.    A brief description why the work is/was reasonably necessary to the accomplishment of CLEANUP AND ABATEMENT;

c.    A sworn statement, under penalty of perjury, by at least one licensed, registered environmental professional retained by MC and Dunivan, that the investigation or remediation work is reasonably necessary to the accomplishment of CLEANUP AND ABATEMENT and meets the conditions set forth in Section II.C, above;

DM1\2318792.1
DM1\2322969.4

      d.      A sworn statement, under penalty of perjury, by the MC representative that the disbursement shall be used solely to pay for the work described in the Disbursement Request.

2.      In the absence of such a valid Disbursement Request, except as provided below in Section II.E., the Escrow Agent shall make no disbursements prior to Final Disbursement, as detailed below.

3.      The following items shall, under no circumstances, be paid from the Escrow Account and the Escrow Agent shall make no disbursements for the following:

      a.      Attorney's fees or costs incurred by either party in connection with this Escrow Agreement, the Injunction Order, or any other matter related to the CLEANUP AND ABATEMENT;

      b.      Administrative or regulatory oversight costs or expenses incurred by the California Regional Water Quality Control Board, or any other state, federal, or local regulatory body, relating to the remediation work at the MC or WCM properties;

      c.      Any payment to MC or Dunivan, unless necessary to reimburse for an amount that either MC or Dunivan paid to an appropriate vendor during the period of this agreement; or,

      d.      Any cost or expense incurred prior to the execution of the Settlement Agreement, regardless of the purpose of such expense.

4.      MC shall provide copies of all requests for disbursement presented to the Escrow Agent as required and described by Section II.D.1. to WCM at the same time as the request is made to the Escrow Agent. WCM shall have the right, but not the obligation, to object in writing to any disbursement request that lacks sufficient detail to confirm that the request is appropriate to be paid under this agreement or does not meet the conditions set forth in the agreement for reimbursement. In the event WCM objects, the Escrow Agent shall make no disbursement unless and until the Parties jointly request the Escrow Agent pay some or all of the requested amount. If the Parties are not able to informally resolve an objection, either Party can request a ruling from the Court during the pendency of any such objection and/or noticed motion by WCM.

5.      Upon any disbursement, the Escrow Agent shall provide WCM with a true and correct copy of all documentation relating to and supporting that disbursement.

E.      In addition to the disbursements described above in Section II.D., WCM shall be entitled to reimbursement of reasonable expenses it incurs in retaining environmental professionals in connection with the CLEANUP AND

DM1\2318792.1
DM1\2322969.4

ABATEMENT.  Disbursements to WCM pursuant to this section will be made pursuant to the same general procedures outlined above in Section II.D.(1)-(5) with WCM obligated to meet the same conditions imposed on MC thereunder, where applicable, including without limitation the provision of required documentation to the Escrow Agent and to MC prior to any disbursement.  MC shall have the same right to object as WCM under Section II.D.4.

F.     The Escrow Agent shall make disbursements from the Escrow Account according to the procedure set forth above until the Escrow Fund is exhausted.  If exhaustion occurs prior to the entry of a Satisfaction of Judgment in the WCM Action, then this Escrow Agreement shall cease and the terms of the Court's Injunction Order and the Parties' Settlement Agreement shall govern.

G.     To the extent disputes arise regarding the use of such Escrow Funds, the Court in the WCM Action retains jurisdiction to resolve any such disputes pursuant to a noticed motion.

## III.   FINAL DISBURSEMENT OF ESCROW FUNDS

If funds remain in the Escrow Account at the end of the 2 year period from the date of the Injunction Order, or as may be extended pursuant to the terms of the Injunction Order, the Escrow Agent shall disburse such funds ("Final Disbursement") as follows:

A.     Upon Entry of Satisfaction of Judgment within 2 years of the date of the Injunction Order, or as may be extended pursuant to the terms of the Injunction Order:  Final Disbursement of any escrow funds remaining in the account shall be made to MC and Dunivan.

B.     If the Court Clerk in the WCM Action has not signed and entered a Satisfaction of Judgment, prior to the expiration of the 2 year period, or any later date ordered by the Court, then any remaining funds in the Escrow Account shall be paid to WCM.

## IV.   DUTIES AND LIABILITIES OF ESCROW AGENT

A.     The Escrow Agent undertakes to perform only such duties as are expressly set forth herein.

B.     The Escrow Agent may rely and shall be protected in acting upon any written notice, instructions or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties.

C.     The Escrow Agent shall not be liable for any action it takes in good faith and which action is reasonably believed to be authorized or within the rights or power conferred upon it by this Escrow Agreement, and shall be fully authorized to perform and protected against any action taken or suffered by it hereunder in good faith.

5

D.   MC and Dunivan shall indemnify the Escrow Agent for and hold it harmless against any loss, liability or expense incurred without negligence or bad faith on the part of the Escrow Agent, arising out of or in connection with its entering into this Escrow Agreement and carrying out its duties hereunder, including the liability arising out of or in connection with this agreement.

E.   The Escrow Agent agrees to provide a written report itemizing all disbursements from the Escrow Amount within twenty (20) days after demand for said report is made by one of the Parties, which report shall detail each disbursement from the Escrow Amount and the reasons for each such disbursement.

F.   This Escrow Agreement contains the entire agreement between the Parties and Escrow Agent with respect to transactions contemplated hereby, and no change, modification or waiver of any provision hereof shall be valid unless in writing and signed by the party to be bound.

G.   This Escrow Agreement shall bind and inure to the benefit of the respective parties, their successors and assigns.

H.   This Escrow Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California.

## V.   NOTICES

Any notices or written communications shall be provided in the most prompt method possible, including electronic mail and fax in addition to U.S. Mail. The following are the designated entities for notice or other communications required by this Escrow Agreement:

For MC:                Dean Dunivan
                       Mayhew Center LLC
                       3317 Vincent Road
                       Pleasanton, CA 94523
                       Tel: (925) 938-6016
                       Email: rddunivan@yahoo.com


                       Aaron Myers
                       Howrey LLP
                       525 Market Street, Suite 3600
                       San Francisco, CA 94105
                       Tel: (415) 848-4970
                       Fax: (415) 848-4999
                       Email: myersa@howrey.com

DM1\2318792.1
DM1\2322969.4

For WCM:            Milt Eberle
                    Walnut Creek Manor, LLC
                    4748 Engle Road, Suite 102
                    Carmichael, CA 95608
                    Tel: (916) 488-3999
                    Email: WGIDInc@aol.com

                    and

                    Brian A. Kelly, Esq.
                    Duane Morris LLP
                    Spear Tower
                    One Market Plaza, Suite 2200
                    San Francisco, CA  94105-1127
                    Tel: (415) 957-3213
                    Fax: (415) 957-3001
                    Email: BAKelly@duanemorris.com

For Escrow Agent:   Millie D. Simplis
                    Manager of Joint Counsel Groups
                    Rossi Doskocil & Finkelstein LLP
                    400 Oceangate, Suite 1000
                    Long Beach, California 90802
                    (562)495-3325 tel.   (562)495-3425 fax
                    Email: millies@rdfcpas.com

## VI.   AUTHORITY TO SIGN.

Each individual signing this Escrow Agreement directly and expressly warrants that she or he has been given and has received and accepted authority to sign and execute the documents on behalf of the party for whom it is indicated she or he has signed, and further has been expressly given and received and accepted authority to enter into a binding agreement or enter into a binding agreement on behalf of such party with respect to the matters contained herein and as stated herein.

**IN WITNESS WHEREOF**, this Escrow Agreement has been executed and delivered by the parties the 27 th day of October 2010

**MAYHEW CENTER LLC**

Dated October 27, 2010
By: _Jeem R Newman_
Its: _Managing Member_

DM1\2318792.1
DM1\3322969.4

DEAN DUNIVAN

Dated: October 27, 2010
By: _____

WALNUT CREEK MANOR LLC

Dated: October 27, 2010
By: _____
Its: _____
      OWNERS REPRESENTATIVE

ROSSI DOSKOCIL & FINKELSTEIN
LLP

Dated: October 28, 2010
By: _____
Its: _____
      Partner

8

# EXHIBIT B

RESIDENTIAL RISK-BASED STANDARDS FOR TETRACHLOROETHYLENE AND DEGRADATION PRODUCTS

| CHEMICAL | SHALLOW SOIL VAPOR (≤5 ft bgs) (µg/L) ESLs[1] | SHALLOW SOIL (≤3m bgs) (mg/kg) ESLs[2] | DEEP SOIL (>3m bgs) (mg/kg) ESLs[3] | GROUNDWATER (µg/L) ESLs[4] |
|---|---|---|---|---|
| Tetrachloroethylene (PCE) | 0.41 | 0.37 | 17 | 120 |
| Trichloroetheylene (TCE) | 1.2 | 1.9 | 33 | 530 |
| cis-1,2-Dichloroethylene | 36.5 | 32.5 | 18 | 6,200 |
| trans-1,2-Dichloroethylene | 75 | 51 | 39 | 6,700 |
| Vinyl Chloride | 0.031 | 0.022 | 0.66 | 3.8 |

Abbreviations:
ft bgs = feet below ground surface
m bgs = meters below ground surface

mg/kg = milligrams per kilogram
µg/L = micrograms per liter

Notes:

1. Environmental Screening Levels (ESLs), Shallow Soil Gas Screening Levels for Evaluation of Potential Vapor Intrusion Concerns (SFRWQCB, 2008; Table E-2). ESLs for noncarcinogens (cis-1,2-dichloroethylene and trans-1,2-dichloroethylene) adjusted to a target hazard quotient of 1.0 for consistency with CHHSLs.

2. Environmental Screening Levels (ESLs), Shallow Soils (≤3m bgs). Groundwater is not a Current or Potential Source of Drinking Water, Residential Land Use (SFRWQCB, 2008; Summary Table B). Direct exposure ESLs for noncarcinogens (cis-1,2-dichloroethylene and trans-1,2-dichloroethylene) adjusted to a target hazard quotient of 1.0 for consistency with RSLs.

3. Environmental Screening Levels (ESLs), Deep Soils (>3m bgs). Groundwater is not a Current or Potential Source of Drinking Water, Residential Land Use (SFRWQCB, 2008; Summary Table D).

4. Environmental Screening Levels (ESLs), Groundwater Screening Levels for Evaluation of Potential Vapor Intrusion Concerns (where groundwater is not a current or potential drinking water resource) (SFRWQCB, 2008; Table E-1).

References:

California Regional Water Quality Control Board, San Francisco Bay Region (SFRWQCB), 2008, Screening for Environmental Concerns at Sites with Contaminated Soil and Groundwater, Interim Final, May.

# EXHIBIT C



"WCM Remediation Area"

# EXHIBIT D

# ACCESS AGREEMENT

This Access Agreement is made as of October 27, 2010, by and between Dean Dunivan and Mayhew Center, LLC, a California limited liability company (collectively "MC"), and Walnut Creek Manor, LLC, a Delaware limited liability company ("WCM") and its respective affiliates, employees, agents, directors, beneficial owners, members or partners (collectively, the "Owner"), for the purpose of effecting the remediation of the WCM property pursuant to the Court's Injunctive Order.

## RECITALS

A.     Owner is the owner of the facility at 81 Mayhew Way, Walnut Creek, California and all buildings and improvements thereon (together the "WCM Site").

B.     MC and WCM, have entered into a Settlement Agreement to resolve the lawsuit and potential appeals from the October 2, 2009 Judgment entered in the United States District Court for the Northern District of California in an action entitled *Walnut Creek Manor, LLC v. Mayhew Center, LLC, et al*, Case No. C-07-5664 (hereafter "WCM Action"), which may require certain remediation work to be performed by MC at the WCM Site.

C.     Pursuant to the Settlement Agreement, the parties have stipulated to the entry of an Injunction Order directed to MC for the cleanup and abatement of the WCM Site affected by PCE, as well as the Source Area 1 of the MC property.

D.     Because it requires the remediation of the WCM Site, the Injunctive Order necessarily calls upon MC and Dunivan, and/or the licensed professionals working on their behalf, to enter onto the WCM Site for the purpose of effectuating the remediation.

E.     The execution and delivery by MC of this Access Agreement is a condition to Owner's permission to allow MC, or any persons and/or entities hired by or on behalf of MC to undertake certain aspects of the necessary remediation (such parties, including any subcontractors thereto, the "Vendors"), to enter and inspect the WCM Site.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged by the Parties, and intending to be legally bound, the Parties hereby agrees as follows:

1.     Assumption of Risk.  Except for the sole and active negligence of the Owner, Owner assumes no responsibility to MC or any person or entity acting on its behalf or at MC's or its agent's direction with respect to such conditions.  MC hereby assumes all risks associated with entering onto the WCM Site, except for any injury or loss caused by the sole negligence of the Owner.

2.     Release.  Except for the sole and active negligence of the Owner, MC hereby releases the Owner from all claims for death, personal injury or damage or destruction to property or business sustained by MC or any person or entity performing work on behalf of MC as a result of or arising from any fire, accident, defect in the WCM Site, any violation that may exist under any law, ordinance, regulation or code applicable to the WCM Site, any defect in or

any failure of any utilities on the WCM Site or any other event or condition whatsoever on the WCM Site.

3.      Indemnity.  Except for the sole and active negligence of the Owner, MC shall indemnify the Owner against and defend, save and hold the Owner harmless from each and every claim, demand, lien, loss, penalty, cost (including attorneys' fees and costs of litigation), judgment and damage of any kind or nature whatsoever at any time made by reason of any death, personal injury or damage or destruction to property or business of any kind whatsoever and to whomsoever belonging including, without limitation, WCM, from any cause or causes arising directly or indirectly in connection with activities conducted on the WCM Site.  The foregoing shall include without limitation the defense or pursuit of any claim or any action or proceeding involved therein, and whether or not (in the case of claims made against the Owner) litigated and/or reduced to judgment, and whether well founded or not.

4.      Damage to Property.  Should MC materially damage or alter the WCM Site as a result of activities conducted thereon, MC shall immediately remedy such damage or alteration and restore the affected portion of the WCM Site to a condition reasonably acceptable to the Owner.

5.      Proof of Insurance.  MC has contracted and is expected to contract with various Vendors, each of whom will provide sufficient evidence of insurance.  Attached hereto as Exhibit A is WCM's New Vendor Certificate Request Letter (the "Insurance Certificate Request") stating the scope of insurance and the proof required, executed by each Vendor.  Such requirements are incorporated into this agreement by reference.  MC has attached as Exhibit B the certificates required by the Insurance Certificate Request from each Vendor.

6.      Release and Waiver of Liens by Vendors.  MC has contracted and may from time to time contract with Vendors to undertake work relating to the required remediation.  Each Vendor has executed or prior to being allowed access to WCM properly will execute an agreement, attached hereto as Exhibit C, expressly waiving any right to file or enforce any lien against the Owner or against the WCM Site in connection with any work done in connection with such remediation.

7.      Test Results and Other Conditions.  MC agrees to provide to WCM at no cost to WCM and as soon as such results are known any and all test results, including quality assurance/quality control documents and laboratory notes or other analysis performed as a result of any work performed at the WCM Site.  MC will and at Owner's request, provide Owner with split or duplicate samples.

8.      Access and Timing.  MC's right to access shall begin upon the Court's approval and entry of the Injunctive Order, and shall extend until MC has performed all necessary remedial and related activity at the WCM Site as required by the Injunction Order.  MC's (and any Vendor or other person or entity acting on behalf of MC) access to the WCM site shall be subject to reasonable time, place and manner restrictions by the Owner.  MC agrees that it will coordinate its activities with a contact person who will be appointed by Owners to assure a minimum and reasonable level of disruption to the residents at the WCM Site and operations thereon as a result of the access and compliance with the Injunction Order.  In the event that MC

2

is in breach of this agreement or in violation of the terms of the Court's Injunction Order, further access may be denied until such conditions of violation and/or breach have been cured.

9.    Enforcement.  This Access Agreement shall be part of a stipulation and proposed Injunctive Order filed with the United States District Court for the Northern District of California, Case No. C 07 5664, with the Parties agreeing that the Access Agreement and any disputes relating to its terms and condition will be enforceable by the Court in the referenced action.

10.    Severability.  If any term or provision of this Access Agreement or the application thereof to any circumstance shall to any extent be invalid or unenforceable, the remainder of this Access Agreement, or the application of such term or provision to circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Access Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.    Governing Law.  This Access Agreement shall be governed by, and construed in accordance with, the laws of the State of California.

12.    Successors and Assigns.  This Access Agreement shall bind MC and MC's heirs, executors, administrators and personal representatives, and shall inure to the benefit of the Owner and its successors and assigns.

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Access Agreement Waiver as of the date first above written.

Date:  October 27, 2010                    By: _____
                                           DEAN DUNIVAN, individually and
                                           on behalf of MAYHEW CENTER LLC

Date:  October 27, 2010                    _____
                                           Milt J. Eberle, on behalf of WALNUT
                                           CREEK MANOR

3

# EXHIBIT A TO
# ACCESS AGREEMENT



(925) 939-3393
Fax (925) 934-1291

**WALNUT CREEK**

*Manor*

*Garden Apartments for Seniors*

81 Mayhew Way    Walnut Creek, California 94597

RE: Walnut Creek Manor LLC and WGID Enterprises, Inc. Insurance Agreement/Requirements

As a vendor providing outside services, we require you to provide current Certificates of Insurance for Liability and Workers' Compensation Insurance.  Please contact your insurance broker or agent and ask them to furnish us the required Certificates of Insurance as follows:

_____    **Certificate of Workers' Compensation Insurance**

_____    **Certificate of Liability Insurance (includes all of the following):**
- Certificate of Liability Insurance holder should be listed as follows:
  **Walnut Creek Manor, LLC and**
  **WGID Enterprises, Inc.**
  **81 Mayhew Way**
  **Walnut Creek, CA 94597**
- The Certificate of Liability Insurance holder is to be named as **additional insured** and the proper endorsement is to be attached to the certificate.
- Thirty days notice of cancellation is to be provided.
- The following wording contained within the cancellation section is to be removed. "endeavor to" and "but failure to mail… agents of representatives" .
- Certificate must evidence General Liability coverage for a limit of not less than $1,000,000.
- The insurance carrier providing coverage for your company must be a rating of A or better based on the most recent publication of Best's Guide.
- The Liability coverage evidenced must be provided on an "Occurrence" basis rather than a "Claims-Made" basis.
- "Continuous until Cancelled" Certificates are not acceptable.  Certificates must contain the policy expiration date.

By signing below, I hereby acknowledge and agree to comply with the above requirements:

Company        _____

Print Name     _____

Signature      _____    Date _____

Sincerely,


Kris Lord, Manager

# EXHIBIT B TO
# ACCESS AGREEMENT

## Exhibit B to Access Agreement

**[Insurance Certificate Request from each vendor for Mayhew Center, LLC and Dean Dunivan will be provided at the time a vendor is hired.]**

## Exhibit B to Access Agreement

# EXHIBIT C TO
# ACCESS AGREEMENT

## AGREEMENT FOR WAIVER OF LIEN BY VENDOR

WHEREAS,_____ has been employed or retained by MAYHEW
CENTER LLC and/or DEAN DUNIVAN (collectively "MC" and/or its attorneys or other
representatives to inspect/remediate certain areas of the facility operated by Walnut Creek
Manor, LLC ("WCM") at 81 Mayhew Way, Walnut Creek, California ("WCM Site") and to
engage in certain soil and/or groundwater sampling, investigation, or remediation at a mutually
agreed upon time and duration (the "Remediation");

WHEREAS, Vendor agrees not to file, assert or enforce any lien against WCM, its
respective affiliates, employees, directors, beneficial owners, members or partners (collectively,
the "Owner") or against the WCM Site, as part of Vendor's preparation for, conduct of, or
reporting upon the Remediation;

THEREFORE, in consideration of the Agreement to allow access and to Remediate the
WCM Site, and for other good and valuable consideration, the receipt and sufficiency of which is
hereby acknowledged, VENDOR hereby agrees:

1.  <u>Waiver of Lien</u>. Vendor waives and releases any and all liens and any and all claims or
    rights to file, assert, or enforce any lien under the State of California, on or against the
    Owner or the WCM Site and any improvements or other real or personal property found
    thereon which arise in connection with Vendor's preparation for, conduct of, or reporting
    upon the Remediation.

2.  <u>Owner as Intended Beneficiary</u>. Vendor agrees the Owner is an intended third party
    beneficiary of this agreement.

3.  <u>Further Assurances</u>.  Vendor agrees to execute and deliver, by the proper exercise of its
    corporate, limited liability company, partnership or other powers, all such other and
    additional instruments and documents and do all such other acts and things as may be
    necessary to more fully effectuate this agreement

4.  <u>Governing Law</u>. This agreement shall be governed by, and construed in accordance with,
    the Laws of the State of California.

5.  <u>Successors and Assigns</u>.  This agreement shall bind Vendor's heirs, executors,
    administrators, and personal representatives, and shall inure to the benefit of WCM and
    its respective successors and assigns.

Dated this ____ day of _____, 2010.

By: _____

Name: _____

      VENDOR

DM1\2270536.1