IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALNUT CREEK MANOR, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MAYHEW CENTER, LLC, and DEAN DUNIVAN, <br><br> Defendants. <br>_____/ | No. C 07-5664 CW <br><br> ORDER DENYING DEFENDANT'S MOTION TO VACATE; SETTING HEARING ON PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS (Docket Nos. 305, 321) |

Plaintiff Walnut Creek Manor, LLC, moves for contempt sanctions against Defendants Dean Dunivan and Mayhew Center, LLC. Dunivan, proceeding pro se, opposes the motion and moves to vacate the injunction issued in November 2010 pursuant to the parties' settlement agreement.[1] Plaintiff opposes Dunivan's motion. After considering the parties' submissions, the Court now denies Dunivan's motion to vacate. The Court will defer its decision on Plaintiff's motion until the parties have submitted further briefing and presented oral argument on the matter.

BACKGROUND

The relevant facts and procedural history of this case are set forth at length in the Court's prior orders. See Docket Nos.

---

[1] Although Dunivan seeks once again to represent Mayhew Center, as explained in prior orders, the local rules preclude him from doing so because he is not an attorney. Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."); Docket No. 296, Order Denying Motion to Enforce Settlement Agreement, at 1 n.1 (explaining Civil Local Rule 3-9); Docket No. 315, Order Denying Motion for Reconsideration and Extension of Time, at 1 n.1 (same); see also United States v. High Country Broad. Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel.").

287, 296, 315. Accordingly, this order provides only a brief summary of the background relevant to the instant motions.

In October 2010, the parties settled this action by stipulating to the entry of an injunction requiring Defendants to remedy the tetrachloroethylene (PCE) contamination that they caused on Plaintiff's property. Docket No. 270, Stipulation & Proposed Injunction, at 1-3. The Court approved the stipulation and signed the parties' proposed injunction on November 23, 2010. Docket No. 273, Order Granting Stipulation. Under the terms of that injunction, Defendants were required to complete cleanup and abatement of the PCE contamination within two years of the date the injunction was entered. Id., Injunction, at 3-6. If they failed to meet that deadline, Plaintiff would be entitled to recover whatever funds remained in an escrow account that Defendants created to fund their cleanup and abatement efforts. Id. at 8.

On November 21, 2012, two days before the deadline set in the injunction, Defendants moved for an extension of time to complete cleanup and abatement. Docket No. 279. The Court denied that motion because Defendants failed to demonstrate good cause for their inability to meet the deadline. In particular, the Court noted that Plaintiff had presented evidence of "multiple instances where Defendants' own conduct led to delays in the remediation process." Docket No. 287, Feb. 1, 2013 Order Denying Motion for Extension of Time, at 2. This included Defendants' failure to hire a licensed geotechnical consultant, provide mandatory insurance forms for their contractors, and commence construction on their own property for several months after the injunction was

2

entered. Nevertheless, despite their culpability for the delays, the Court permitted Defendants to continue using the escrow funds to finance their cleanup and abatement efforts because Plaintiff represented that it did not wish to recover the escrow funds at that time. The Court ordered Defendants to complete their cleanup and abatement obligations by July 31, 2013 and directed Plaintiff not to seek access to the escrow account until that date.

On July 30, 2013, after Defendants failed to complete cleanup and abatement, Plaintiff filed its motion for sanctions and contempt. One month later, on August 28, Dunivan moved to vacate the injunction. The parties' submissions contained sufficient information for the Court to decide Dunivan's motion and resolve certain elements of Plaintiff's motion without oral argument. However, because more information and a hearing are required to resolve the other elements of Plaintiff's motion, the Court will hold a hearing to address those matters separately.

## LEGAL STANDARD

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding. Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 827-28 (1994). A contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." Id. A contempt fine is considered remedial if it either "coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." United States v. United Mine Workers, 330 U.S. 258, 303-304 (1947). See also Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).

3

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." Id. (internal formatting and quotations omitted). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982)).

Thus, the Court may grant a motion for an order of contempt if it finds that Defendants (1) violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. Id. Once the moving party has met its burden, the burden "shifts to the contemnors to demonstrate why they were unable to comply" with the court order. Stone, 968 F.2d at 856 n.9 (citing Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983)). "They must show they took every reasonable step to

comply." Id. (citing Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th Cir. 1976)).

When a court imposes civil contempt sanctions, "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed." Id. However, "the district court retains discretion to establish appropriate sanctions." United States v. Bright, 596 F.3d 683, 695-96 (9th Cir. 2010) (citing Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992)). "Given the remedial purpose of the sanction, a finding of contempt must be accompanied by conditions by which contempt may be purged, spelled out in either the original order or the contempt order." Id. The court may also order the contemnor to compensate its adversary "for injuries resulting from the contemnor's noncompliance" with an earlier court order. Ahearn v. Int'l Longshore & Warehouse Union, 721 F.3d 1122, 1131 (9th Cir. 2013).

## DISCUSSION

Because Plaintiff's motion for contempt sanctions is premised on the enforceability of the November 2010 injunction, the Court considers Dunivan's motion to vacate the injunction before turning to Plaintiff's motion.

I. Dunivan's Motion to Vacate

Dunivan moves to vacate the injunction under Federal Rule of Civil Procedure 60(b)(1), which permits a party to seek relief from a final order for "mistake, inadvertence, surprise, or

5

excusable neglect."[2] Dunivan argues that this Court, as well as the magistrate judge assigned to this case, erred by failing to obtain Dr. Clifford Tschetter's approval of the parties' October 2010 settlement agreement. He contends that Tschetter, a non-party in this suit who Dunivan alleges was previously affiliated with Mayhew Center, should have been required to state his approval of the settlement on the record before the Court signed the parties' proposed injunction. This argument fails for several reasons.

First, as a threshold matter, Dunivan's motion is not timely. Rule 60(c) requires that any motion under Rule 60(b)(1) be filed "no more than a year after the entry of the judgment or order or the date of the proceeding" that the movant seeks to challenge. Here, Dunivan seeks to challenge an injunction that was entered more than three years ago. This is not permitted under Rule 60(c).

Second, Dunivan fails to cite any precedent requiring a non-party to approve a settlement agreement before an order entered pursuant to that settlement agreement becomes binding. Although he quotes a lengthy passage from Ebates Performance Mktg. Inc. v. Integral Technologies Inc., 2013 WL 4427115 (N.D. Cal.),

---

[2] Dunivan states that his motion is also filed pursuant to Rule 60(d)(1). This provision is inapposite here because it protects a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding." Fed. R. Civ. P. 60(d)(1) (emphasis added). Dunivan has not filed an "independent action" here but, rather, seeks relief from a prior order issued in this action. Furthermore, even if Dunivan had filed an independent action to challenge the 2010 injunction, he would not meet the "demanding standard" that is required for relief under Rule 60(d)(1). United States v. Beggerly, 524 U.S. 38, 46 (1998) (noting that "an independent action should be available only to prevent a grave miscarriage of justice").

6

describing a federal court's equitable power to enforce settlement agreements, he fails to explain how that passage is applicable here. The passage Dunivan cites makes clear that <u>Ebates</u> addressed a situation where the parties failed to execute a written settlement agreement and "'material facts concerning the existence or terms of an agreement to settle [were] in dispute.'" <u>Id.</u> at *1 (quoting <u>Callie v. Near</u>, 829 F.2d 888, 890 (9th Cir. 1987)). In contrast, all of the parties in this case signed a written settlement agreement, the terms of which are not in dispute. <u>Ebates</u> is therefore inapposite.

Finally, Dunivan's motion fails because the November 2010 injunction was drafted jointly by the parties -- all of whom were represented by counsel at the time -- and entered pursuant to a stipulation. If Dunivan had any objections to the terms of the injunction, he could have simply refrained from signing the settlement agreement. He did not and, therefore, both he and Mayhew Center remain bound by its terms.

II. Plaintiff's Motion for Sanctions and Contempt

Plaintiff requests the following forms of relief in its motion: recovery of whatever funds remain in the escrow account, an order of contempt directing Defendants to complete cleanup and abatement and to pay back their recent withdrawals from the escrow account, the appointment of a special master or other monitor to oversee Defendants' cleanup and abatement efforts, and reasonable attorneys' fees.

For reasons explained more fully below, the Court defers judgment on Plaintiff's requests for an order of contempt and a special master until the parties have had an opportunity to submit

7

further briefing and present oral argument on these matters. The Court does not, however, defer judgment on Plaintiff's request to recover the remaining escrow funds and attorneys' fees because the November 2010 injunction expressly provides for this relief.

   A.   Recovery of Remaining Funds in Escrow Account

The November 2010 injunction required Defendants to reduce the levels of PCE concentration in Plaintiff's soil, soil vapor, and groundwater to "the most stringent standards or levels for residential properties articulated by the Regional Water Quality Control Board, San Francisco Bay Region." Injunction at 3. The injunction stated that, if Defendants failed to achieve these "residential standards" by November 23, 2012, "any remaining ESCROW FUNDS shall be paid to [Plaintiff]." Id. at 8.

Plaintiff has provided ample evidence here to show that Defendants failed to achieve the residential standards required by the injunction. For instance, it submitted a declaration from Milt Eberle, one of the managers of Walnut Creek Manor, describing how Defendants have failed to commence any significant work on Plaintiff's property since the Court extended their cleanup and abatement deadline. Docket No. 310, Declaration of M. Eberle ¶ 6 ("Since the Court issued its order extending the time-frame for MC [Mayhew Center] to complete the goals of the Injunction Order on February 1, 2013, MC has done nothing to pursue remediation of the [Walnut Creek Manor] property."). Specifically, Eberle noted that Defendants have not conducted any recent soil tests on Plaintiff's property and appear to have abandoned the interim remedial action plan (IRAP) that they had agreed to implement in October 2012. Id.

8

Eberle's account is consistent with that of Plaintiff's environmental expert, Scott Warner, who has been monitoring Defendants' cleanup and abatement efforts since the injunction was entered. Docket No. 309, Declaration of S. Warner ¶¶ 1-4. Warner, a licensed engineering geologist, asserted in his declaration that Defendants not only failed to reduce the PCE levels in Plaintiff's soil and groundwater to the requisite residential standards, but also failed to exercise "reasonable diligence" in seeking to achieve those standards. Id. ¶ 11 ("In my opinion, had MC acted with reasonable diligence, it could have completed the remediation plan called-for in the October 2012 Interim Remedial Action Plan (IRAP) before July 31, 2013."). He further asserts that the limited work that Defendants have undertaken over the past three years -- such as a July 2012 soil test -- has been rendered useless by Defendants' recent decision to abandon the October 2012 IRAP. Id. ¶ 17 ("None of the work related to the IRAP has any usefulness in the absence of the work plan set forth in the IRAP.").

Plaintiff has also submitted external documentation of Defendants' intransigence. It points, for instance, to a letter that the Regional Water Quality Control Board sent Defendants in January 2013 notifying them of their failure to submit a mandatory report on their progress. Kelly Decl., Ex. B, Notice of Violation for Failure to Submit Technical Report. The letter highlighted Defendants' failure to implement the October 2012 IRAP and specifically noted that "Mayhew has not begun the excavation activities -- on its own property or elsewhere -- that would be necessary in order to complete the report." Id. at 2.

9

Dunivan does not dispute the accuracy of any of this evidence nor does he offer any evidence of his own to suggest that Defendants made reasonable efforts to comply with the November 2010 injunction or the February 2013 order. Although he asserts that Plaintiff's counsel deliberately sought to prevent him from accessing the escrow account, he fails to cite any specific documents in the record to support this allegation.[3] If anything, the record suggests that Plaintiff <u>facilitated</u> Defendants' access to the escrow account by deciding not to seek recovery of those funds in November 2012, when it was first entitled to do so under the injunction. As this Court observed in its February 2013 order, Plaintiff represented at that time that it did "not wish to recover the funds in the escrow account but rather wishe[d] to leave them available [to Defendants] for prompt cleanup and abatement of its property." Docket No. 287, at 3. Despite this second opportunity to use the escrow funds to satisfy their settlement obligations, Defendants failed to make any significant progress towards reducing the PCE contamination. Thus, Plaintiff is entitled to whatever money remains in the escrow account, as

---

[3] Dunivan submitted more than four-hundred pages of exhibits with his opposition brief. Most of these exhibits are unlabeled and filed in non-chronological order. What's more, Dunivan fails to cite specific page numbers for any exhibit cited in his brief. Nevertheless, Dunivan's allegation of obstruction by Plaintiff's counsel appears to be based on a letter that Plaintiff's counsel sent to Defendants' counsel in June 2012 objecting to one of Defendants' requests for disbursement from the escrow account. See Docket No. 328-6, Dunivan Decl., Ex. 15 (part 2), at 6-8. Because this objection was based solely on legitimate concerns about the size of Defendants' disbursement request -- and noted various discrepancies between the size of Defendants' disbursement request and the billing records they provided to support the request -- this letter does not demonstrate willful obstruction by Plaintiff's counsel.

10

provided by the express terms of the injunction.[4]  Defendants remain obliged to complete cleanup and abatement.

B.  Order of Contempt Directing Cleanup and Abatement and Requiring Defendants to Repay Escrow Funds

Section I of the November 2010 injunction states that this Court shall retain jurisdiction to enforce the terms of the injunction.  Injunction at 8.  As explained in detail above, Plaintiff has provided undisputed documentation that Defendants have not reduced the levels of PCE in Plaintiff's soil, soil vapor, and groundwater to the residential standards set forth in the injunction.  This documentation constitutes "clear and convincing evidence" that Defendants failed to satisfy their obligations under the injunction.  Defendants have not shown that this failure was "based on a good faith and reasonable interpretation of the court's order."  In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d at 695.

Nevertheless, Defendants will be given one final opportunity to explain why they should not be held in contempt.  If they fail to do so, they may be ordered to repay all of the escrow funds that they spent on the incomplete October 2012 IRAP.  This sanction would serve the traditional purposes of civil contempt by compensating Plaintiff for the inconvenience caused by the ongoing contamination and enabling it to take steps to begin remedying the contamination on its own.  See Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983) (noting that civil contempt sanctions are "characterized by the court's desire to

---

[4] The parties agree that more than $900,000 of the original $1.15 million remains in the escrow account.  See Kelly Decl. ¶ 12; Dunivan Decl., Ex. 1.

11

1  compel obedience to a court order, or to compensate the
2  contemnor's adversary for the injuries which result from the
3  noncompliance." (citations omitted)). The Court may also impose
4  further coercive sanctions on Defendants to ensure compliance with
5  the injunction. Int'l Union, 512 U.S. at 827 ("[C]ivil contempt
6  sanctions, or those penalties designed to compel future compliance
7  with a court order, are considered to be coercive and avoidable
8  through obedience.").

9  The Court will hold a hearing to address whether Defendants
10 have made appropriate use of the escrow funds and whether their
11 efforts to carry out the October 2012 IRAP were productive. Prior
12 to the hearing, Defendants may submit billing records,
13 contractors' receipts, and any other records documenting their
14 expenditures and progress in implementing the October 2012 IRAP.

15     C.    Appointment of Special Master

16 Plaintiff requests the appointment of a special master to
17 oversee and direct Defendants' future cleanup and abatement
18 efforts. Dunivan likewise requests the appointment of a special
19 master but asks that the special master's "sole function" be to
20 "approve or disapprove all bills submitted for remediation."
21 Docket No. 326, Dunivan Opp. Mot. Sanctions, at 2.

22 "The appointment of a Special Master, with appropriately
23 defined powers, is within both the inherent equitable powers of
24 the court and the provisions of Rule 53 of the Federal Rules of
25 Civil Procedure." Madrid v. Gomez, 889 F. Supp. 1146, 1282 (N.D.
26 Cal. 1995). Typically, a district court may appoint a special
27 master only if the parties have stipulated to the terms of such an
28 appointment or if the appointment is warranted by "some

12

exceptional condition." Fed. R. Civ. P. 53(a)(1)(b)(i); Harmston v. City & Cnty. of San Francisco, 2007 WL 3306526, at *9 (N.D. Cal.).

The parties have not identified any individuals to serve as special master here nor have they stipulated to a specific set of matters for the special master to oversee. The Court therefore defers its decision on whether to appoint a special master until the hearing on Plaintiff's contempt motion. In the interim, each of the parties must submit the names of three nominees willing to serve as special master and a brief statement outlining the special master's proposed responsibilities.

D. Attorneys' Fees

The November 2010 injunction expressly provides that, if either party files a motion with the Court to resolve any disputes regarding the "interpretation, application, or enforcement" of the injunction, the prevailing party shall recover its reasonable attorneys' fees and costs. Injunction at 8.

Accordingly, Plaintiff is entitled to recover its reasonable attorneys' fees and costs expended in opposing (1) Defendants' motion for an extension of time to complete cleanup and abatement, Docket No. 279; (2) Dunivan's motion to enforce the settlement agreement, Docket No. 288; (3) Dunivan's motion for reconsideration, Docket No. 297; (4) Dunivan's motion for an additional extension of time, Docket No. 304; and (5) Dunivan's motion to vacate the injunction, Docket No. 321.

Although Plaintiff has provided a declaration from Eberle stating that it expended "approximately $340,177.41" in attorneys' fees and costs, it has not provided any itemized billing records

13

or hourly rates to support that assertion. Plaintiff must therefore provide this documentation of its attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, Dunivan's motion to vacate the injunction (Docket No. 321) is DENIED and Plaintiff's motion for contempt sanctions (Docket No. 305) will be heard after further briefing. Plaintiff's objection to Dunivan's late-filed declaration under Civil Local Rule 7.3(d) is OVERRULED as moot. The declaration consists of inadmissible hearsay, unsupported allegations, and argument, none of which suffices to alter the outcome of this case.

The Court will hold a hearing at 2:00 p.m. on Thursday, January 23, 2014 to determine whether a special master should be appointed and whether Defendants should be held in civil contempt for their failure to complete cleanup and abatement of the PCE contamination on Plaintiff's property.

By December 30, 2013, Defendants must submit a list with the names, qualifications, and fees of three nominees willing to serve as special master along with a brief description, not to exceed one page, of the special master's proposed oversight responsibilities. Defendants should also submit by that date any billing records, contractors' receipts, and other evidence documenting their efforts to implement the October 2012 IRAP. All of these records must be filed in chronological order, clearly labeled, paginated, and accompanied by a declaration, sworn under penalty of perjury, verifying their accuracy. Defendants shall

14

not submit any exhibits that do not provide documentary evidence of their efforts to implement the October 2012 IRAP.

By January 8, 2014, Plaintiff may submit a five-page brief responding to Defendants' evidence. Plaintiff should also submit by that date its own list of three nominees willing to serve as special master along with their qualifications and fees and a brief description, not to exceed one page, of the special master's proposed oversight responsibilities.

Pursuant to the parties' settlement agreement, whatever funds remain in the escrow account will be turned over to Plaintiff. Effective immediately, Defendants may not draw upon those funds. However, pending the January 23, 2014 hearing, the funds shall remain in escrow.

Plaintiff is entitled to recover its reasonable attorneys' fees and costs expended in opposing the five motions listed above. It must therefore provide appropriate documentation to support its fee request, including itemized billing records and its attorneys' hourly rates, by December 30, 2013. Defendants may submit an eight-page opposition to the amount of Plaintiff's fee request by January 8, 2014.

As stated in the injunction, the Court will enter final judgment only upon the stipulation of the parties or upon a finding that Defendants have completed their obligations under the injunction.

IT IS SO ORDERED.

Dated: 12/10/2013

CLAUDIA WILKEN
United States District Judge

15