IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALNUT CREEK MANOR, LLC, | No. C 07-5664 CW |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTIONS FOR CONTEMPT SANCTIONS AND ATTORNEYS' FEES (Docket Nos. 305, 336) |
| v. | |
| MAYHEW CENTER, LLC, and DEAN DUNIVAN, | |
| Defendants. | |

Plaintiff Walnut Creek Manor, LLC moves for contempt sanctions and attorneys' fees against Defendants Dean Dunivan and Mayhew Center, LLC. Defendants oppose both motions. After considering the parties' submissions and oral argument, the Court grants the motions.

BACKGROUND

The relevant facts and procedural history of this action are set forth at length in prior orders. See Docket Nos. 287, 296, 315. Accordingly, this order provides only a brief summary of the background relevant to the instant motions.

In October 2010, the parties settled this action by stipulating to the entry of an injunction requiring Defendants to remedy the tetrachloroethylene (PCE) contamination that they had caused on Plaintiff's property. Docket No. 270, Stipulation & Proposed Injunction, at 1-3. The Court approved the stipulation and entered the parties' proposed injunction on November 23, 2010. Docket No. 273, Order Granting Stipulation. Under the terms of that injunction, Defendants were required to complete cleanup and abatement of the PCE contamination within two years of the date

the injunction was entered. Id., Injunction, at 3-6. The injunction specifically required Defendants to reduce the concentration of PCE in Plaintiff's groundwater, soil, and soil vapor to certain "residential standards" set by the Regional Water Quality Control Board (RWQCB). Id. If they failed to achieve these standards by the injunction's November 2012 deadline, Plaintiff would be entitled to recover whatever funds remained in an escrow account that Defendants had created to fund their cleanup and abatement efforts. Id. at 8.

Defendants failed to complete their cleanup and abatement obligations by the November 2012 deadline. The Court therefore set a new deadline of July 31, 2013 for Defendants to complete their cleanup and abatement obligations. Docket No. 287, Feb. 1, 2013 Order Denying Motion for Extension of Time, at 2. Although Plaintiff was entitled under the injunction to recover whatever funds remained in the escrow account as of November 2012, it agreed to give Defendants continued access to the account until the July 2013 deadline to fund their remediation efforts.

Despite this extension, Defendants failed to complete cleanup and abatement by July 31, 2013. Plaintiff moved for contempt sanctions against them based on their failure to comply with the injunction. In its motion, Plaintiff requested various forms of relief, including: (1) recovery of whatever funds remain in the escrow account; (2) an order of contempt directing Defendants to complete cleanup and abatement and to pay back all of the money they withdrew from the escrow account; (3) appointment of a special master to oversee Defendants' ongoing cleanup and abatement efforts; and (4) reasonable attorneys' fees and costs.

2

In December 2013, the Court issued an order resolving some of these issues and soliciting further briefing on others. Specifically, the Court found that Plaintiff was entitled to its reasonable attorneys' fees and whatever funds remained in the escrow account because the injunction expressly provided for this relief. The Court deferred judgment, however, on Plaintiff's request for the appointment of a special master until the parties each had a chance to nominate specific candidates willing to play that role. Docket No. 334, Order Setting Hearing on Plaintiff's Motion for Sanctions, at 13-14. The Court also deferred judgment on Plaintiff's request for an order of contempt so that Defendants could have "one final opportunity to explain why they should not be held in contempt." Id. at 11. The Court directed Defendants to submit "billing records, contractors' receipts, and any other records documenting their expenditures and progress" in implementing their most recent remediation plan. Id. at 12. A hearing was held on these matters on January 23, 2014.

DISCUSSION

I.   Contempt Sanctions

    A.   Finding of Civil Contempt

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding. Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 827–28 (1994). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & County of

3

San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." Id. (internal formatting and quotations omitted). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982)).

As explained in the December 2013 order, "Plaintiff has provided ample evidence here to show that Defendants failed to achieve the residential standards required by the [November 2010] injunction." Docket No. 334, at 8. Defendants do not dispute that they failed to achieve these standards by the injunction deadline nor do they dispute that they still have not achieved these standards more than a year later. Although they contend that they have made "significant and substantial efforts and progress toward the remediation," Docket No. 339, Defs.' Supp. Mem., at 3, they have not shown that they made "every reasonable effort" to comply with the injunction, Dual-Deck Video, 10 F.3d at 695. Defendants failed to submit any of the "billing records, contractors' receipts, and [] other records" documenting their progress that they were ordered to submit in the Court's prior order. Docket No. 334, at 12. Moreover, the evidence that they

4

did submit -- namely, declarations from Defendant Dunivan and an environmental geologist named Dr. Mansour Sepehr -- focuses primarily on the reductions in PCE levels on their own property, not Plaintiff's property.  Most importantly, none of this evidence contradicts the Court's earlier finding, in its February 2013 order,[1] that Defendants' failure to complete timely cleanup and abatement was largely a product of their own carelessness and neglect.

Defendants' latest excuse for noncompliance, like their prior excuses, ignores their own culpability for delays in the remediation process.  Defendants assert that they abandoned their most recent remediation plan -- the October 2012 interim remedial action plan (IRAP) -- because it did not adequately address the groundwater contamination on Plaintiff's property.  But they ignore the fact that it was their own responsibility to develop an effective remediation plan with the RWQCB.  To the extent Defendants had any concerns with the October 2012 IRAP, they should have resolved these issues more than a year ago rather than waiting until after they had missed their second cleanup and abatement deadline in July 2013.  In addition, Defendants should have explained these concerns to the Court in January 2013 when they requested additional time to complete cleanup and abatement.  They did not do so and, in fact, specifically represented to the

---

[1] See Docket No. 287, Order Denying Defendants' Motion for an Extension of Time, at 2 ("Defendants failed to provide mandatory insurance forms for their contractors, which delayed work on Plaintiff's property for several months."); id. at 3 ("Defendants also ignore the fact that they failed to commence work on their own property -- to which they had full and unrestricted access -- for more than a year after the injunction issued, despite pleas from the Regional Water Board to begin much sooner.").

1 Court that they were in the process of implementing the October
2 2012 IRAP at that time.

3 While Defendant Dunivan and Dr. Sepehr both allude in their
4 declarations to the recent removal of a significant mass of
5 subsurface PCE, both neglect to mention that this PCE was removed
6 from Defendants' property rather than Plaintiff's property. See
7 Dunivan Decl. ¶¶ 23-24; Sepehr ¶¶ 22-25. Further, even if this
8 removal had occurred on Plaintiff's property, Defendants have not
9 shown that it would have been significant enough to constitute
10 "substantial compliance" with the November 2010 injunction. See
11 Dunivan Decl. ¶ 24 (estimating, without identifying the basis of
12 the estimate, that "approximately 20% of the total mass of PCE in
13 the subsurface" had been removed). Thus, because Defendants have
14 failed to show that they substantially complied with the November
15 2010 injunction, the Court holds them in contempt.

16    B.   Sanctions

17 As explained in the December 2013 order, Plaintiff is
18 entitled to recover whatever funds remained in the escrow account
19 as of July 31, 2013. The November 2010 injunction expressly
20 provides for this relief in the event that Defendants fail to
21 complete timely cleanup and abatement. The injunction does not,
22 however, require that Defendants pay back all of the funds that
23 they withdrew from the escrow account. Accordingly, Plaintiff
24 seeks this relief as a sanction for civil contempt.

25 Civil contempt sanctions are "characterized by the court's
26 desire to compel obedience to a court order, or to compensate the
27 contemnor's adversary for the injuries which result from the
28 noncompliance." Falstaff Brewing Corp. v. Miller Brewing Co., 702

6

F.2d 770, 778 (9th Cir. 1983) (citations omitted).  As such, these sanctions are typically "designed to compel future compliance with a court order" and should be made "avoidable through obedience."  Int'l Union, 512 U.S. at 827.

Here, Plaintiff has not explained how an order directing Defendants to pay back all of the money they withdrew from the escrow account would compel Defendants to complete cleanup and abatement in the future.  Only a small portion of the escrow funds has been spent at this point and most of those expenditures were approved by Plaintiff.  Thus, any order directing Defendants to pay back the spent escrow funds would be punitive rather than coercive or compensatory.  This is not the purpose of civil contempt sanctions.

That said, the Court has the authority to compel Defendants to complete their original cleanup and abatement obligations. Int'l Union, 512 U.S. at 827 (recognizing that a court has the authority to enforce compliance with its orders).  Defendants are therefore ordered to reduce the concentration of PCE in Plaintiff's groundwater, soil, and soil vapor to the residential standards set forth in the November 2010 injunction.  In seeking to achieve these standards, Defendants must comply with any applicable rules or orders issued by the RWQCB.  Defendants' failure to satisfy their cleanup and abatement obligations or to comply timely with any RWQCB rules or orders will be considered further contempt of court and result in further sanctions.

II.  Appointment of a Special Master

On January 8, 2014, Plaintiff withdrew its request for the appointment of a special master, stating that "on reflection, it

7

appears near certain that the appointment of a Special Master to oversee any work by Defendant is unlikely in itself to achieve compliance with the Injunction Order." Docket No. 346, Withdrawal of Request for Special Master, at 1-2.  In light of Plaintiff's withdrawal of its request and both parties' failure to identify any candidates willing to serve as special master, the Court shall not appoint a special master at this time.

III. Attorneys' Fees and Costs

As explained in the December 2013 order, Defendants must compensate Plaintiff for its reasonable attorneys' fees and costs expended in responding to Defendants' various motions to delay enforcement of the injunction over the past fourteen months. Specifically, "Plaintiff is entitled to recover its reasonable attorneys' fees and costs expended in opposing (1) Defendants' motion for an extension of time to complete cleanup and abatement, Docket No. 279; (2) Dunivan's motion to enforce the settlement agreement, Docket No. 288; (3) Dunivan's motion for reconsideration, Docket No. 297; (4) Dunivan's motion for an additional extension of time, Docket No. 304; and (5) Dunivan's motion to vacate the injunction, Docket No. 321." Docket No. 334, at 13.  Because Plaintiff failed to submit its attorneys' billing records and hourly rates with its original motion for contempt sanctions, the Court directed Plaintiff to submit these documents in a supplemental brief.  Plaintiff submitted its supplemental brief, styled as a new motion for attorneys' fees, in December 2013.  Docket No. 336.  In its motion, Plaintiff claims that it spent $99,551.83 in attorneys' fees and costs in responding to the motions identified in the Court's prior order.

8

Defendants object to this request on several grounds. They contend that Plaintiff's counsel charged unreasonable hourly rates, failed to keep accurate billing records, and billed time for two motions which Plaintiff never opposed. Each of these objections is discussed separately below.

A.   Hourly Rates

Plaintiff has submitted a declaration from the manager of Walnut Creek Manor, Milt Eberle, stating that he reviewed all of Plaintiff's counsel's invoices and believes that the hourly rates charged in those invoices are reasonable. Eberle Decl. ¶¶ 2-5. In addition, Plaintiff has submitted a declaration from Richard Pearl, an expert on local attorneys' rates and fees, asserting that the rates charged by Plaintiff's counsel are within the normal range charged by attorneys in environmental disputes such as this one. Docket No. 347-1, Pearl Decl. ¶¶ 7-10. Pearl's declaration compares Plaintiff's counsel's rates to rates that have been documented in attorney surveys and rates that have been upheld as reasonable by other courts. Id. ¶¶ 11-13. By all of these metrics, the rates charged by Plaintiff's counsel are reasonable. Id.

B.   Specific Billing Entries

Defendants object to several specific billing entries as duplicative, unrelated to the relevant motions, or lacking in specificity. After reviewing the entries identified by Defendants, the Court finds that all but two are non-objectionable. The two problematic entries are Brian Kelly's entries for December 4, 2012 (Invoice #1826939) and December 11, 2012 (Invoice #1826939), both of which employ block-billing and

9

appear to exceed the number of hours that should have been logged for the tasks identified. Each entry states that Mr. Kelly spent 6.80 hours on activities that should have taken less time and should have been billed separately, including multiple conferences with co-counsel, reviewing work product, and communicating with client representatives. The Court shall therefore award Plaintiff $4,488 for these services, or fifty percent of the $8,976 that Plaintiff's counsel originally billed for this time. See Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008) (stating that block-billing and excessive billing "are legitimate grounds for reducing or eliminating certain claimed hours, but not for denying all fees").

C.   Time Logged for Two Unopposed Motions

Plaintiff requests a total of $12,828 for fees expended in responding to Dunivan's motion to enforce the settlement agreement, Docket No. 288, and his subsequent motion for reconsideration, Docket No. 297. Defendants contend that this amount is excessive because Plaintiff never filed an opposition to either of these motions.

Plaintiff's failure to file an opposition to either of these motions justifies reducing, but not eliminating, the fees it has requested regarding these motions. Even if Plaintiff ultimately declined to file an opposition to either of Dunivan's motions, Plaintiff's counsel may nevertheless be compensated for the time they spent reviewing the motions, discussing them with their client, and considering whether or not to respond. These tasks should have consumed no more than six hours of counsel's time. Accordingly, the fees awarded for these tasks shall be reduced to

10

$3240. This figure assumes that Plaintiff's attorneys spent three hours each on these tasks.

D. Final Award of Attorneys' Fees

Based on the above reductions in Plaintiff's requested fee award, Plaintiff is entitled to $85,105.83 in attorneys' fees.[2]

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for contempt sanctions (Docket No. 305) is GRANTED. The Court hereby holds Defendants in contempt for failing to comply with the November 2010 injunction and the February 2013 order denying their request for an extension of time. Defendants are directed to release all remaining escrow funds to Plaintiff immediately. Further, they must complete remediation of the PCE contamination on Plaintiff's property, as set forth in the November 2010 injunction, within six months of this order. Failure to do so will be considered further contempt and result in coercive sanctions. In completing the cleanup and abatement in accordance with this order, Defendants must comply timely with all orders of the RWQCB.

In addition, Plaintiff's motion for attorneys' fees (Docket No. 336) is GRANTED. Defendants shall immediately pay Plaintiff $85,105.83 for its reasonable attorneys' fees and costs.

IT IS SO ORDERED.

Dated: 2/12/2014

CLAUDIA WILKEN
United States District Judge

---

[2] The Court has reduced Plaintiff's requested fee award of $99,551.83 by a total of $14,446.

11